<u>EXHIBIT A</u>

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| YARWAY CORPORATION,[1] | Case No. 13-11025 (BLS) |
| Debtor. | |

**PLAN OF REORGANIZATION FOR YARWAY CORPORATION
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE PROPOSED BY
YARWAY CORPORATION AND TYCO INTERNATIONAL PLC**

SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois  60603
Larry J. Nyhan
Kenneth P. Kansa
Dennis M. Twomey
Allison Ross Stromberg
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

COLE SCHOTZ P.C.
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

Counsel to the Debtor and Debtor in Possession

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Michael A. Rosenthal
Jeremy L. Graves
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Mark D. Collins (No. 2981)
Marcos A. Ramos (No. 4450)
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

Counsel to Tyco International plc

Dated:  _____, 2015

*This Plan of Reorganization provides for an "Asbestos Personal Injury Channeling Injunction" pursuant to section 524(g) of the Bankruptcy Code.  For a description of the causes of action to be enjoined and the identities of the entities that would be subject to the injunction, see Article X of this Plan.*

---

[1] The last four digits of the Debtor's taxpayer identification number are 8165.  The Debtor's address is 4700 Exchange Court, Suite 300, Boca Raton, FL 33431.

# TABLE OF CONTENTS

Page

ARTICLE I. DEFINITIONS AND INTERPRETATIONS...................................................1

    1.1.    Capitalized Terms ...............................................................................1
    1.2.    Ancillary Documents. ........................................................................15

ARTICLE II. ADMINISTRATIVE EXPENSE AND PRIORITY TAX CLAIMS.....................15

    2.1.    Summary. ...........................................................................................15
    2.2.    Administrative Expense Claims...........................................................15
    2.3.    Priority Tax Claims ............................................................................17

ARTICLE III. TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS ..........17

    3.1.    Classification.....................................................................................17
    3.2.    Treatment and Classification of Claims and Equity Interests.................17

ARTICLE IV. ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION
                 BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY INTERESTS.........19

    4.1.    Classes Entitled to Vote .....................................................................19
    4.2.    Class Acceptance Requirement............................................................20
    4.3.    Issuance of Injunction Pursuant to Section 524(g) of the Bankruptcy Code...........20
    4.4.    Cramdown...........................................................................................20
    4.5.    Acceptance by Unimpaired Classes.....................................................20
    4.6.    Rejection by Class 6...........................................................................20

ARTICLE V. DISTRIBUTIONS UNDER THE PLAN ON ACCOUNT OF CLAIMS
              OTHER THAN ASBESTOS PERSONAL INJURY CLAIMS ...........................20

    5.1.    Distributions......................................................................................20
    5.2.    Record Date for Holders of Claims .....................................................21
    5.3.    Date of Distributions..........................................................................21
    5.4.    Postpetition Interest on Claims ...........................................................21
    5.5.    Means of Cash Payment......................................................................21
    5.6.    Delivery of Distributions ....................................................................21
    5.7.    Time Bar to Cash Payments................................................................21
    5.8.    Prepayment of Claims........................................................................22
    5.9.    Fractional Cents .................................................................................22
    5.10.   Setoff and Recoupment......................................................................22

ARTICLE VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
              LEASES ............................................................................................22

    6.1.    General Treatment .............................................................................22
    6.2.    Cure of Defaults................................................................................23
    6.3.    Bar to Rejection Damages ..................................................................23

# TABLE OF CONTENTS
## (Continued)

Page

ARTICLE VII. PROCEDURES FOR RESOLVING AND TREATING DISPUTED
CLAIMS OTHER THAN ASBESTOS PERSONAL INJURY CLAIMS
AND PROFESSIONAL FEE CLAIMS ...........................................................23

7.1.    Disputed Claims.................................................................................................23
7.2.    Objection to and Estimation of Claims..............................................................24
7.3.    Payments and Distributions with Respect to Disputed Claims..........................24

ARTICLE VIII. MEANS FOR IMPLEMENTATION OF THE PLAN ......................................24

8.1.    Generally............................................................................................................24
8.2.    Transactions on the Effective Date ...................................................................24
8.3.    The Asbestos Personal Injury Trust.................................................................25
8.4.    Amended Certificate of Incorporation and By-Laws.........................................28
8.5.    Net Reserve Funds ...........................................................................................29
8.6.    Reorganized Yarway Common Stock.................................................................29
8.7.    Corporate Governance of Reorganized Yarway ...............................................29
8.8.    Operations of the Debtor Between Confirmation and the Effective Date ...............29
8.9.    Corporate Action...............................................................................................29
8.10.   Effectuating Documents; Further Transactions .................................................29

ARTICLE IX. EFFECT OF CONFIRMATION ......................................................................30

9.1.    Dissolution of Asbestos Claimants Committee; Discharge of the Future Claimants'
Representative..................................................................................................30
9.2.    Vesting of Assets ..............................................................................................31
9.3.    Preservation of Certain Causes of Action, Rights to Settle Claims and Compromise
Controversies, and Defenses...........................................................................31
9.4.    Terms of Injunction and Automatic Stay............................................................31
9.5.    No Liability for Certain Tax Claims....................................................................32
9.6.    No Successor Liability .......................................................................................32

ARTICLE X. RELEASES, INJUNCTIONS AND INDEMNIFICATION OF CLAIMS ............32

10.1.   Discharge of Yarway and Reorganized Yarway.................................................32
10.2.   Yarway Discharge Injunction ............................................................................33
10.3.   Asbestos Personal Injury Channeling Injunction...............................................33
10.4.   Exculpation .......................................................................................................34
10.5.   Releases by Yarway and Estate and Related Injunction ...................................34
10.6.   Certain Waivers. ...............................................................................................36
10.7.   Disallowed Claims .............................................................................................36
10.8.   Indemnification Obligations ..............................................................................37

# TABLE OF CONTENTS
## (Continued)

Page

ARTICLE XI. CONDITIONS TO CONFIRMATION AND CONSUMMATION OF
    THE PLAN ...............................................................................................38

11.1.   Conditions Precedent to Confirmation of the Plan ..................................38
11.2.   Conditions Precedent to the Effective Date of the Plan...........................42
11.3.   Waiver of Conditions Precedent ..............................................................42
11.4.   Failure to Achieve the Effective Date......................................................42

ARTICLE XII. JURISDICTION OF BANKRUPTCY COURT ................................43

12.1.   Retention of Jurisdiction .........................................................................43
12.2.   Modification of Plan ................................................................................46
12.3.   Consent to Jurisdiction............................................................................46

ARTICLE XIII. MISCELLANEOUS PROVISIONS ................................................46

13.1.   Governing Law .......................................................................................46
13.2.   Notices ....................................................................................................47
13.3.   Inconsistencies ........................................................................................48
13.4.   Tax Reporting and Compliance ...............................................................48
13.5.   Payment of Statutory Fees ......................................................................48
13.6.   Exemption from Transfer Taxes ..............................................................48
13.7.   Recordable Order.....................................................................................49
13.8.   Binding Effect..........................................................................................49
13.9.   Severability .............................................................................................49
13.10.  Further Authorizations ............................................................................49
13.11.  General Statements .................................................................................49
13.12.  Entire Agreement ....................................................................................49

## TABLE OF CONTENTS
(Continued)

**EXHIBITS**

Exhibit A       Asbestos Personal Injury Trust Agreement
Exhibit B       [Reserved]
Exhibit C       Asbestos Personal Injury Trust Distribution Procedures
Exhibit D       Amended Certificate of Incorporation of Yarway Corporation
Exhibit E       Amended By-Laws of Yarway Corporation
Exhibit F       Assumed Executory Contracts
Exhibit G       [Reserved]
Exhibit H       Asbestos Claims Indemnification Agreement
Exhibit I       Asbestos Personal Injury Claimant Release
Exhibit J       Yarway Release
Exhibit K       Settling Asbestos Insurers
Exhibit L       Asbestos Records Cooperation Agreement

## INTRODUCTION

Yarway and Tyco propose the following plan of reorganization for Yarway pursuant to sections 524(g) and 1121(a) of title 11 of the United States Code:

## ARTICLE I.

## DEFINITIONS AND INTERPRETATIONS

In the Plan, the definitions provided in this Article I shall apply.  Unless otherwise specified, all Article or Exhibit references in the Plan are to the respective Article of or Exhibit to the Plan, as the same may be amended or modified from time to time.  Wherever from the context it appears appropriate, each term stated in either the singular or the plural will include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender will include the masculine, feminine, and neuter.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular Article, subsection or clause.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Rule 9006(a) of the Bankruptcy Rules will apply.

**1.1.    Capitalized Terms**.  The capitalized terms used herein have the respective meanings set forth below.  Any term that is not otherwise defined in this Section 1.1, but that is defined elsewhere in the Plan, the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Plan, the Bankruptcy Code or Bankruptcy Rules, as applicable.

**1.1.1.    Administrative Expense Claims Bar Date** means the deadline to file a request for payment of an Administrative Expense Claim, which shall be the first Business Day that is sixty (60) days after the Effective Date.

**1.1.2.    Administrative Expense Claim** means any right to payment constituting a cost or expense of administration of the Chapter 11 Case incurred on or prior to the Effective Date and allowable under section 503(b) of the Bankruptcy Code and entitled to priority under section 507(a)(2) or 507(b) of the Bankruptcy Code, including, without limitation: (a) any actual and necessary post-petition cost or expense of preserving Yarway's Estate; (b) any actual and necessary post-petition cost or expense of operating Yarway's business; (c) any indebtedness or obligation incurred or assumed by Yarway as a Debtor in Possession during the Chapter 11 Case; (d) any Professional Fee Claim, to the extent Allowed by Final Order under sections 328, 330, 331 or 503 of the Bankruptcy Code; and (e) any fee or charge assessed against the Estate under 28 U.S.C. § 1930, including post-Confirmation Date fees and charges.

**1.1.3.    Adversary Proceeding** means the adversary proceeding commenced as Adversary Proceeding No. 13-51040 (BLS) in the Bankruptcy Court on May 6, 2013.

**1.1.4.    Affiliate** shall have the meaning ascribed to such term in section 101(2) of the Bankruptcy Code as currently adopted; provided, however, that (i) the term "Entity", as defined herein, shall be substituted in such definition for the terms "corporation" and "entity" and (ii) the term "voting securities" as used in such definition shall include interests in limited liability companies and other equity interests.

**1.1.5.    Allowed** means, when used with respect to any Claim against Yarway, including Administrative Expense Claims but excluding Asbestos Personal Injury Claims, such Claim or portion thereof:  (a) as to which no objection or request for estimation has been filed, and Yarway otherwise has assented to the validity thereof (and as to which proof of such Claim has been properly and timely filed to the extent required by the Plan or any order of the Bankruptcy Court); (b) as to which any objection or request for estimation that has been filed has been settled, waived, withdrawn or denied by a Final Order; or (c) that is allowed (i) pursuant to the terms of a Final Order, (ii) pursuant to the terms of an agreement by and among the holder(s) of such Claim and Yarway (or Reorganized Yarway, as the case may be), or (iii) under the terms of the Plan; provided, however, that for the purposes of determining the status (i.e., Allowed, Disputed or Disallowed) of a particular Claim prior to the expiration of the period fixed for filing objections to the allowance or disallowance of such Claim, any such Claim which has not been previously allowed or disallowed by a Final Order of the Bankruptcy Court shall be deemed a Disputed Claim, unless such Claim is specifically identified by Yarway in the Plan or other filing with the Bankruptcy Court as being an Allowed Claim.

**1.1.6.    Allowed Amount** means, with respect to any Claim, including Administrative Expense Claims but excluding Asbestos Personal Injury Claims, the lesser of (i) the dollar amount of such Claim as Allowed or (ii) the estimated amount of such Claim (other than the estimated amount of any Claim for voting purposes only) as set forth in a Final Order. Unless otherwise provided in the Plan or a Final Order, the Allowed Amount of a Claim shall not include interest or penalties accruing on such Claim from and after the Petition Date.

**1.1.7.    Amended By-Laws** means the amended and restated by-laws of Reorganized Yarway, which shall be substantially in the form attached as Exhibit E as may be modified by, *inter alia*, filing with the Plan Supplement.

**1.1.8.    Amended Certificate of Incorporation** means the amended and restated certificate of incorporation of Reorganized Yarway, which shall be substantially in the form attached as Exhibit D hereto as may be modified by, *inter alia*, filing with the Plan Supplement.

**1.1.9.    Asbestos Claimants Committee** means the official committee of asbestos personal injury claimants appointed in the Chapter 11 Case, as such committee may be reconstituted from time to time.

**1.1.10.  Asbestos Claims Indemnification Agreement** means that certain agreement whereby Reorganized Yarway and the Asbestos Personal Injury Trust shall indemnify and hold harmless each of the Non-Debtor Affiliates and the Representatives of Yarway, Reorganized Yarway, and the Non-Debtor Affiliates in respect of any liability, obligation, fee, judgment, settlement, or expense, including, without limitation, legal fees and

expenses, arising from or incurred in connection with any action based upon, attributable to, or arising out of an Asbestos Personal Injury Claim or any violation of the Asbestos Personal Injury Channeling Injunction by any Entity, which shall be substantially in the form attached as <u>Exhibit H</u> hereto.

**1.1.11. Asbestos Personal Injury Channeling Injunction** means the injunction provided for in Section 10.3 of the Plan.

**1.1.12. Asbestos Personal Injury Claim** means each of (a) a General Asbestos Personal Injury Claim, and (b) an Indirect Asbestos Personal Injury Claim.

**1.1.13. Asbestos Personal Injury Claimant Release** means a general release of all Asbestos Personal Injury Claims against (a) the Yarway Related Parties, (b) the Settling Asbestos Insurers, and (c) any Representatives of each of the foregoing, which shall be in substantially the form attached as <u>Exhibit I</u> hereto and shall be in form and substance acceptable to Tyco, Yarway, the Asbestos Claimants Committee and the Future Claimants' Representative.

**1.1.14. Asbestos Personal Injury Trust** means the asbestos personal injury trust established pursuant to section 524(g) of the Bankruptcy Code and in accordance with the Plan, the Confirmation Order and the Asbestos Personal Injury Trust Agreement, which trust shall constitute a "qualified settlement fund" under section 468B of the Internal Revenue Code.

**1.1.15. Asbestos Personal Injury Trust Advisory Committee** means the Asbestos Personal Injury Trust advisory committee established pursuant to the terms of the Plan and the Asbestos Personal Injury Trust Agreement and identified in the Asbestos Personal Injury Trust Agreement.

**1.1.16. Asbestos Personal Injury Trust Agreement** means the agreement, to be dated as of the Effective Date, by and among Reorganized Yarway, the Asbestos Personal Injury Trustee(s), the Future Claimants' Representative, and the Asbestos Personal Injury Trust Advisory Committee, governing the creation and the terms of the Asbestos Personal Injury Trust, which shall be substantially in the form attached as <u>Exhibit A</u> hereto.

**1.1.17. Asbestos Personal Injury Trust Assets** means, collectively: (a) the Asbestos Personal Injury Trust Contributions; (b) all other assets, rights, and benefits assigned, transferred or conveyed to the Asbestos Personal Injury Trust in connection with the Plan or any Plan Documents; and (c) all proceeds of the foregoing.

**1.1.18. Asbestos Personal Injury Trust Bylaws** means the Asbestos Personal Injury Trust Bylaws to be adopted by the Asbestos Personal Injury Trust after the Effective Date, as such bylaws may be amended or modified from time to time in accordance with the terms of the Asbestos Personal Injury Trust Agreement.

**1.1.19. Asbestos Personal Injury Trust Contributions** means, collectively, the Yarway Contribution and the Tyco Contribution.

**1.1.20. Asbestos Personal Injury Trust Distribution Procedures** means the trust distribution procedures for the Asbestos Personal Injury Trust, which shall be substantially in the form attached as Exhibit C hereto, and such additional procedures as may subsequently be adopted by the Asbestos Personal Injury Trust, which provide for the resolution, liquidation, and satisfaction of Asbestos Personal Injury Claims.

**1.1.21. Asbestos Personal Injury Trust Documents** means, collectively:  (a) the Asbestos Personal Injury Trust Agreement; (b) the Asbestos Personal Injury Trust Distribution Procedures; (c) the Asbestos Personal Injury Trust Bylaws; (d) the Asbestos Records Cooperation Agreement; and (e) any other agreements, instruments and documents governing the establishment and administration of the Asbestos Personal Injury Trust, which shall be materially consistent with the terms of the Plan, the Asbestos Personal Injury Trust Agreement, the Asbestos Personal Injury Trust Distribution Procedures, and the Asbestos Personal Injury Trust Bylaws, as the same may be amended or modified from time to time, in accordance with the terms thereof.

**1.1.22. Asbestos Personal Injury Trust Expenses** means any of the liabilities, costs, or expenses incurred by or on behalf of the Asbestos Personal Injury Trust (other than liabilities to holders of Asbestos Personal Injury Claims in respect of such Claims), in carrying out the terms of the Asbestos Personal Injury Trust Agreement.

**1.1.23. Asbestos Personal Injury Trustee(s)** means the individual or individuals set forth in the Asbestos Personal Injury Trust Agreement and appointed pursuant to the Confirmation Order to serve as the trustee(s) for the Asbestos Personal Injury Trust in accordance with the terms of the Plan and the Asbestos Personal Injury Trust Agreement, and any successor trustee(s) thereto appointed in accordance with the Asbestos Personal Injury Trust Agreement.

**1.1.24. Asbestos Records** shall have the meaning ascribed to such term in the Asbestos Records Cooperation Agreement.

**1.1.25. Asbestos Records Cooperation Agreement** means the cooperation agreement with respect to Asbestos Records entered into as of the Effective Date, which shall be substantially in the form attached as Exhibit L hereto.

**1.1.26. Avoidance Action** means any and all actual or potential claims or causes of action to avoid a transfer of property or an obligation incurred by Yarway pursuant to any of sections 502(d), 542, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code, or applicable state or federal statutes and common law, whether or not litigation has been commenced with respect to such claim(s) or cause(s) of action as of the Effective Date.

**1.1.27. Ballot** means each of the ballots and/or master ballots distributed with the Disclosure Statement to holders of Impaired Claims against Yarway, on which ballot such holders of Impaired Claims may vote to accept or reject the Plan pursuant to the voting procedures approved by the Bankruptcy Court in the Solicitation Procedures Order.

**1.1.28. Bankruptcy Code** means title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as in effect on the Petition Date, together with all amendments,

modifications, and replacements of the foregoing that are made retroactive to the Petition Date, as the same may exist on any relevant date to the extent applicable to the Chapter 11 Case.

**1.1.29. Bankruptcy Court** means the United States Bankruptcy Court for the District of Delaware or such other court (other than the District Court) as may have jurisdiction over the Chapter 11 Case.

**1.1.30. Bankruptcy Rules** means, collectively: (a) the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code; (b) the Federal Rules of Civil Procedure, as applicable to the Chapter 11 Case or any proceedings therein; and (c) the local rules of the Bankruptcy Court, all as amended from time to time and applicable to the Chapter 11 Case.

**1.1.31. Business Day** means any day other than a Saturday, a Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**1.1.32. Cash** means legal tender of the United States of America.

**1.1.33. Cause of Action** means any action, including any Avoidance Action, cause of action, liability, obligation, account, controversy, right to legal remedy, right to equitable remedy, right to payment, suit, debt, sum of money, damage, judgment, Claim or Demand whatsoever, whether known or unknown, now or in the future, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, whether alleged, asserted or assertable directly, indirectly or derivatively, in law, equity, admiralty, or otherwise, arising under any applicable law, regulation, or similar governmental pronouncement.

**1.1.34. Chapter 11 Case** means the case under chapter 11 of the Bankruptcy Code commenced by Yarway on the Petition Date.

**1.1.35. Claim** means (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such right gives rise to a right to payment, whether or not such right to any equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**1.1.36. Claims and Balloting Agent** means the claims, noticing and balloting agent in the Chapter 11 Case, Logan & Company, Inc.

**1.1.37. Class** means a category of holders of Claims or Equity Interests described in Article III of the Plan.

**1.1.38. Confirmation Date** means the earlier of (a) the date on which the order of the Bankruptcy Court confirming the plan under section 1129 of the Bankruptcy Code is affirmed by the District Court or (b) the date on which the Confirmation Order is entered by the District Court.

**1.1.39. Confirmation Hearing** means the hearing to be held by the Bankruptcy Court and/or District Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

**1.1.40. Confirmation Order** means (a) the order of the District Court confirming the Plan under section 1129 of the Bankruptcy Code or (b) collectively, the order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code and the order of the District Court affirming such order, which in either case shall contain the Asbestos Personal Injury Channeling Injunction.

**1.1.41. Cure Claim** means a Claim based upon Yarway's monetary default(s) under an Executory Contract existing as of the time such Executory Contract is assumed by Yarway pursuant to section 365 of the Bankruptcy Code.

**1.1.42. Debtor** means Yarway.

**1.1.43. Debtor in Possession** means Yarway, as debtor in possession in the Chapter 11 Case pursuant to section 1101(1) of the Bankruptcy Code.

**1.1.44. Demand** means any demand for payment, present or future, within the meaning of section 524(g) of the Bankruptcy Code.

**1.1.45. Disallowed** means, when used with respect to a Claim against Yarway, other than an Asbestos Personal Injury Claim, a Claim that: (a) is denied, dismissed, expunged, overruled, or disallowed in whole or in part (but solely to the extent of such disallowance) by Final Order; or (b) has been withdrawn, in whole or in part (but solely to the extent of such withdrawal), by the holder thereof.

**1.1.46. Disclosure Statement** means the written disclosure statement that relates to the Plan, including the exhibits thereto, approved by the Bankruptcy Court after the Petition Date as containing adequate information pursuant to section 1125 of the Bankruptcy Code and Rule 3017 of the Bankruptcy Rules, as such disclosure statement may be amended, modified, or supplemented from time to time.

**1.1.47. Disputed Claim** means a Claim against Yarway or any portion thereof, other than an Asbestos Personal Injury Claim, that is neither Allowed nor Disallowed or is contingent, disputed or unliquidated.

**1.1.48. Distribution Record Date** means the record date for determining an entitlement to receive Distributions under the Plan on account of Allowed Claims, other than Asbestos Personal Injury Claims, which date shall be the Confirmation Date.

**1.1.49. Distribution** means any: (a) Cash; (b) property; or (c) interest in property to be paid or distributed hereunder to the holders of Allowed Claims, not including Asbestos Personal Injury Claims.

**1.1.50. District Court** means the United States District Court for the District of Delaware.

**1.1.51. Effective Date** means the date on which all conditions to consummation of the Plan set forth in Section 11.2 have been satisfied or waived.

**1.1.52. Encumbrance** means, with respect to any property (whether real or personal, or tangible or intangible), any mortgage, Lien, pledge, charge, security interest, assignment, or encumbrance of any kind or nature in respect of such property, including, without limitation, any conditional sale or other title retention agreement, any security agreement, and the filing of, or agreement to give, any financing statement under the Uniform Commercial Code or comparable law of any jurisdiction, to secure payment of a debt or performance of an obligation.

**1.1.53. Entity** means any natural person or any organization created by law, including, without limitation, any individual, company, corporation, limited liability company, partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, or government or any political subdivision thereof.

**1.1.54. Equity Interests** means all of the outstanding stock of Yarway, 100% of which is held by Tyco Fire & Security.

**1.1.55. Estate** means the estate created under section 541 of the Bankruptcy Code in the Chapter 11 Case.

**1.1.56. Exculpated Parties** means, collectively, (a) Yarway, (b) the Non-Debtor Affiliates, (c) the Asbestos Claimants Committee, solely in its capacity as such, (d) the Future Claimants' Representative, solely in his capacity as such, and (e) Representatives of any of the foregoing Entities, solely in their capacity as such.

**1.1.57. Executory Contract** means any unexpired lease or executory contract of Yarway that is subject to treatment under section 365 of the Bankruptcy Code.

**1.1.58. Federal Judgment Rate** means the rate specified by 28 U.S.C. § 1961.

**1.1.59. Final Order** means a judgment or an order, as the case may be, of any court of competent jurisdiction, as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing shall then be pending; provided, however, that if an appeal, writ of certiorari, reargument or rehearing thereof has been filed or sought: (a)(i) such judgment or order shall have been affirmed by the highest court to which such judgment or order was appealed; or (ii) certiorari shall have been denied or reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; or (b) such appeal, writ of certiorari, or request for reargument or rehearing shall have been dismissed with prejudice by the filing or seeking party; provided further, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule

under the Bankruptcy Rules, may be filed relating to such order shall not cause such order not to be a Final Order.

**1.1.60. Future Claimants' Representative** means James L. Patton, Jr. (or any court-appointed alternative or successor), in his capacity as the court-appointed legal representative for all Future Demand Holders pursuant to section 524(g) of the Bankruptcy Code.

**1.1.61. Future Demand Holder** means an Entity that holds or might subsequently hold a Demand.

**1.1.62. General Asbestos Personal Injury Claim** means any Claim, Demand, or Cause of Action or any portion thereof against, or any debt, liability, or obligation of, Yarway or any other Protected Party, arising in any jurisdiction around the world, whether now existing or hereafter arising, whether in the nature of or sounding in tort, or under contract, warranty, employer liability, or any other theory of law, equity, or admiralty whatsoever (including, without limitation, any Claim, Demand, or Cause of Action based upon (i) a legal or equitable theory of liability in the nature of veil piercing, alter ego, successor liability, vicarious liability, mere continuation, fraudulent transfer or conveyance, or conspiracy, upon which any of the Non-Debtor Affiliates are liable or are alleged to be liable, to the extent arising, directly, indirectly or derivatively, from (a) acts, omissions, business, or operations of Yarway or Gimpel, and/or (b) acts, omissions, business, or operations of any other Entity for whose products or operations Yarway has liability or is alleged to have liability (including, without limitation, Gimpel), to the extent Yarway has or is alleged to have liability for such acts, omissions, business, operations, or products; and (ii) the sale or distribution of Yarway Product Lines by Grinnell Corporation, Mueller Company, Anderson, Greenwood & Co., Kunkle Valve Company Inc., The Henry Pratt Company, or any other Non-Debtor Affiliate, and any Representative of any of the foregoing Entities) for, attributable to, arising out of, based upon, or resulting from, directly or indirectly, death, bodily injury, sickness, disease, or other personal or emotional injuries to persons caused, or allegedly caused, directly or indirectly, by the presence of, or exposure to, Yarway Product Lines. For the avoidance of doubt, "General Asbestos Personal Injury Claim" shall include, but shall not be limited to, any Claim, Demand, Cause of Action, allegation, debt, liability, or obligation described in the immediately preceding sentence that, directly, indirectly or derivatively, arises from or is based upon any acts or omissions that constituted or may have constituted ordinary or gross negligence or reckless, willful, or wanton misconduct of Yarway or any other Entity for whose acts, omissions, business, operations, or products Yarway has liability or is alleged to have liability (including, without limitation, Gimpel), and any conduct for which Yarway, or any other Entity for whose acts, omissions, business, operations, or products Yarway has liability or is alleged to have liability (including, without limitation, Gimpel), may be deemed to have strict liability under any applicable law, including claims, debts, obligations, or liabilities for compensatory damages (such as loss of consortium, medical monitoring, personal or bodily injury, wrongful death, survivorship, proximate, consequential, general, and special damages) and punitive damages, but only to the extent any such liability or alleged liability is for, attributable to, arising out of, based upon, or resulting from, directly or indirectly, death, bodily injury, sickness, disease, or other personal or emotional injuries to persons caused, or allegedly caused, directly or indirectly, by the presence of, or exposure to, Yarway Product Lines. For purposes of this definition, "veil piercing, alter ego, successor liability, vicarious liability, mere continuation, fraudulent transfer or conveyance,

8

or conspiracy" claims shall include, but shall not be limited to, (a) fraudulent transfer or fraudulent conveyance claims, or claims seeking to avoid and/or recover any transfers of property, under applicable state or federal law; (b) denuding the corporation claims; (c) single business enterprise or common enterprise claims; (d) claims that Yarway was the predecessor to any Non-Debtor Affiliate; (e) claims that Yarway was the mere instrumentality, agent, dominated or controlled party, or alter ego of any of Non-Debtor Affiliate, or that any Non-Debtor Affiliate was the mere instrumentality, agent, dominated or controlled party, or alter ego of Yarway; (f) claims that any Non-Debtor Affiliate was the mere continuation of Yarway; (g) negligent provision of services claims; (h) claims that any Non-Debtor Affiliate, on the one hand, and Yarway, on the other hand, conspired with one another, aided and abetted one another, or acted in concert with one another; and (i) any other Claims, Demands, or Causes of Action asserted derivatively against any of the Non-Debtor Affiliates that belong to, or may be brought on behalf of, Yarway, whether or not included in the foregoing list, including, without limitation, any other such claim or cause of action against a Non-Debtor Affiliate entitled to protection under section 524(g)(4)(A)(ii) of the Bankruptcy Code.  Notwithstanding the foregoing, the term "General Asbestos Personal Injury Claim" shall not include (a) any Claim by any present or former employee of Yarway for benefits under a policy of workers' compensation insurance or for benefits under any state or federal workers' compensation statute or other statute providing compensation to an employee from an employer; or (b) any Indirect Asbestos Personal Injury Claim.

**1.1.64. General Unsecured Claim** means a Claim against Yarway that is not secured by a valid and enforceable Lien against property of Yarway and that is not an Administrative Expense Claim, a Priority Claim, a Priority Tax Claim, an Intercompany Claim or an Asbestos Personal Injury Claim.

**1.1.65. Gimpel** means Gimpel Corporation, a Delaware corporation formerly known as Triple G Acquisition Corporation, that was merged into Yarway on June 29, 2000, in its own capacity and as successor to Gimpel Corporation (formerly known as Gimpel Machine Works, Inc.), a Pennsylvania corporation.

**1.1.66. Impaired** means, when used with respect to a Claim or an Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.1.67. Implementation Steps Plan** means that certain Implementation Steps Plan to be filed with the Bankruptcy Court not less than ten (10) days prior to the Effective Date, which Implementation Steps Plan shall set forth the restructurings, transfers, and other corporate transactions that the Plan Proponents determine to be necessary or appropriate to effectuate the Plan, including, without limitation, the Tyco Contribution and the Yarway Contribution to the Asbestos Personal Injury Trust in compliance with the Bankruptcy Code and other applicable law and, to the maximum extent possible, in a tax efficient manner.

**1.1.68. Indirect Asbestos Personal Injury Claim** means any cross-claim, contribution claim, subrogation claim, reimbursement claim, indemnity claim, guaranty claim, or other similar indirect Claim, Demand, or Cause of Action, arising in any jurisdiction around the world, against any Protected Party, whether or not such Claim, Demand, or Cause of

Action is or has been reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, whether or not the facts of or legal bases therefor are known or unknown, and whether in the nature of or sounding in tort, or under contract or implied by law (as governed by the applicable non-bankruptcy law), statutory right, warranty, guaranty, contribution, joint liability, joint and several liability, subrogation, reimbursement, or indemnity, or any other theory of law, equity, or admiralty whatsoever for, attributable to, arising out of, based upon, or resulting from, directly or indirectly, death, bodily injury, sickness, disease, or other personal or emotional injuries to persons caused, or allegedly caused, directly or indirectly, by the presence of, or exposure to, Yarway Product Lines.  For the avoidance of doubt, "Indirect Asbestos Personal Injury Claim" shall include, but shall not be limited to, any Claim, Demand, or Cause of Action described in the immediately preceding sentence that, directly, indirectly or derivatively, arises from or is based upon any acts or omissions that constituted or may have constituted ordinary or gross negligence or reckless, willful, or wanton misconduct of Yarway or any other Entity for whose acts, omissions, business, operations, or products Yarway has liability or is alleged to have liability (including, without limitation, Gimpel), and any conduct for which Yarway, or any other Entity for whose acts, omissions, business, operations, or products Yarway has liability or is alleged to have liability (including, without limitation, Gimpel), may be deemed to have strict liability under any applicable law, including claims, debts, obligations, or liabilities for compensatory damages (such as loss of consortium, medical monitoring, personal or bodily injury, wrongful death, survivorship, proximate, consequential, general, and special damages) and punitive damages, but only to the extent any such liability or alleged liability is for, attributable to, arising out of, based upon, or resulting from, directly or indirectly, death, bodily injury, sickness, disease, or other personal or emotional injuries to persons caused, or allegedly caused, directly or indirectly, by the presence of, or exposure to, Yarway Product Lines.

**1.1.69. Intercompany Claim** means any Claim held by an Affiliate of Yarway against Yarway.

**1.1.70. Lien** means any charge against or interest in property to secure payment of a debt or performance of an obligation.

**1.1.71. Net Reserve Funds** means the lesser of (i) Cash in the amount of $5 million or (ii) the amount of Cash held by Yarway as of the Effective Date, to be set aside by Yarway on the Effective Date for the purpose of satisfying all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Secured Claims, Allowed General Unsecured Claims, and any fees and expenses of the Asbestos Claimants Committee and the Future Claimants' Representative or Post-Effective Date Future Claimants' Representative payable by Yarway pursuant to Section 9.1 of the Plan.

**1.1.72. Non-Debtor Affiliates** means Tyco and all current and former Affiliates of Tyco other than Yarway, and any of their successors or assigns, solely in their capacity as such.  For the avoidance of doubt, Non-Debtor Affiliates shall include, without limitation, (i) Pentair Ltd. (f/k/a Tyco Flow Control International Ltd. and as predecessor-by-merger to Pentair plc), (ii) Covidien plc (f/k/a Tyco Healthcare Ltd.), (iii) TE Connectivity Ltd. (f/k/a Tyco Electronics Ltd.), (iv) The ADT Corporation, (v) Grinnell Corporation, (vi) Mueller

Company, (vii) Anderson, Greenwood & Co., (viii) Kunkle Valve Company Inc., and (ix) The Henry Pratt Company, and any of their Affiliates.

**1.1.73. Petition Date** means April 22, 2013.

**1.1.74. Plan** means this Plan of Reorganization for Yarway Corporation Under Chapter 11 of the Bankruptcy Code Proposed By Yarway Corporation and Tyco International plc, including any supplements and exhibits hereto, either in its present form or as the same may be amended, modified or supplemented from time to time in accordance with the terms hereof.

**1.1.75. Plan Documents** means, collectively, (a) the Plan, (b) the Disclosure Statement, (c) all of the exhibits attached to the Plan and the Disclosure Statement, and (d) any other document necessary to implement the Plan.

**1.1.76. Plan Proponents** means Yarway and Tyco.

**1.1.77. Plan Supplement** means the supplement to the Plan to be filed with the Bankruptcy Court not later than ten (10) calendar days prior to the deadline established for objecting to confirmation of this Plan, in form and substance acceptable to the Plan Proponents.

**1.1.78. Post-Effective Date Future Claimants' Representative** means the Future Claimants' Representative or such other person appointed by the Bankruptcy Court, and identified in the Asbestos Personal Injury Trust Agreement (or any court-appointed alternative or successor), in his capacity as the legal representative of Future Demand Holders subsequent to the Effective Date pursuant to section 524(g) of the Bankruptcy Code.

**1.1.79. Priority Claim** means any Claim entitled to priority pursuant to section 507 of the Bankruptcy Code other than an Administrative Expense Claim or a Priority Tax Claim.

**1.1.80. Priority Tax Claim** means any Claim entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

**1.1.81. Professional** means any person retained or to be compensated in the Chapter 11 Case pursuant to section 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code.

**1.1.82. Professional Fee Claim** means any Claim of a (a) Professional for allowance of compensation and/or reimbursement of costs and expenses, and (b) member of the Asbestos Claimants Committee for reimbursement of costs and expenses, in each case incurred in the Chapter 11 Case on or before the Effective Date.

**1.1.83. Proof of Claim** means any proof of claim filed with the Bankruptcy Court or the Claims and Balloting Agent pursuant to Bankruptcy Code section 501 and Rule 3001 or 3002 of the Bankruptcy Rules that asserts a Claim against Yarway.

**1.1.84. Protected Party** means (a) the Yarway Related Parties, (b) the Settling Asbestos Insurers, and (c) any Representative of any of the foregoing Entities.

**1.1.85. Released Parties** means each of the following: (a) Yarway; (b) the Asbestos Claimants Committee, solely in its capacity as such; (c) the Future Claimants' Representative, solely in his capacity as such; and (d) any Representatives of the foregoing Entities, other than Tyco Representatives.

**1.1.86. Reorganized Yarway** means Yarway, or any successor thereto by merger, consolidation, or otherwise, on and after the Effective Date.

**1.1.87. Reorganized Yarway Common Stock** means all of the issued and outstanding shares of common stock of Reorganized Yarway to be deemed authorized and issued under Section 8.6 of the Plan.

**1.1.88. Representative** means, with respect to any specified Entity, any current or former principal, shareholder, officer, director, employee, agent, attorney, accountant, financial advisor, investment banker, consultant, any other professional, and any other representative or any person who controls any of these within the meaning of the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended, solely in their capacities as such, as well as any of the successors and assigns of the foregoing.

**1.1.89. Schedules** means the schedules of assets and liabilities and the statements of financial affairs of Yarway as filed with the Bankruptcy Court by Yarway in accordance with section 521 of the Bankruptcy Code, as such schedules and statements may be amended or supplemented from time to time.

**1.1.90. Secured Claim** means a Claim, other than an Intercompany Claim, that is: (a) secured by a valid, duly perfected, non-avoidable Lien, mortgage, security interest, or other Encumbrance on or in an interest of Yarway in property, to the extent of the value, as of the Effective Date or such other date as is established by the Bankruptcy Court, of the holder's interest in Yarway's interest in such property, as determined by a Final Order of the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code or as otherwise agreed in writing by Yarway and the holder of the applicable Claim; or (b) secured by the amount of any valid, non-avoidable rights of setoff of the holder thereof under section 553 of the Bankruptcy Code.

**1.1.91. Settling Asbestos Insurer** means those Entities listed on Exhibit K hereto, each of which is an insurance company, broker or guaranty association that issued, or that had any actual, potential or alleged liabilities, or duties, under or with respect to any insurance policy or policies to or for the benefit of Yarway or to or for the benefit of any predecessor or successor of Yarway that provided coverage for Asbestos Personal Injury Claims and that entered into a settlement agreement with Yarway prior to the Petition Date to settle or resolve any claim, Cause of Action or rights of Yarway against such Entity relating to coverage available under such policy.

**1.1.92. Solicitation Procedures Order** means the Order (I) Approving Disclosure Statement; (II) Establishing Procedures for Solicitation and Tabulation of Votes to

Accept or Reject Plan of Reorganization; (III) Approving Forms of Ballots, (IV) Approving Form and Scope of Notice of the Plan and Confirmation Hearing, and (V) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Plan, entered by the Bankruptcy Court in the Chapter 11 Case on January 27, 2015 [Docket No. 756].

**1.1.93. Tyco** means Tyco International plc, a public limited company incorporated under the laws of Ireland, as successor by merger to Tyco International Ltd., a company incorporated under the laws of Switzerland, and any successor or assign of the foregoing.

**1.1.94. Tyco Cash** means the sum of (a) Cash in the amount of $325 million less the Yarway Contribution, plus (b) interest on $325 million in the amount of 3.5% per annum for the period, if any, commencing on September 1, 2015 and continuing through the earlier of (i) the date the Tyco Contribution and the Yarway Contribution are made or (ii) the date the obligation of Tyco to make the Tyco Contribution expires in accordance with Section 8.3(i) of the Plan.

**1.1.95. Tyco Contribution** means, in the aggregate, the following contributions made on the Effective Date to the Asbestos Personal Injury Trust by Tyco or one or more of its Affiliates, on behalf of Tyco and the other Non-Debtor Affiliates:

(a)     the Tyco Cash;

(b)     the waiver, release, and discharge of any and all Intercompany Claims held by one or more Non-Debtor Affiliates against Yarway, and any associated rights of setoff that may otherwise be asserted against assets of Yarway or the Estate; and

(c)     100% of the Equity Interests in Reorganized Yarway.

**1.1.96. Tyco Fire & Security** means Tyco Fire & Security US Holdings LLC, a Delaware limited liability company.

**1.1.97. Tyco Released Parties** means (a) Tyco and the other Non-Debtor Affiliates, (b) the Settling Asbestos Insurers, solely in their capacity as such, (c) any Representative of the Entities set forth in (a) and (b) of this definition, and (d) any Tyco Representative.

**1.1.98. Tyco Released Party Claims** means any claims of Yarway against any Tyco Released Party relating to, associated with, arising from or on account of: (a) any Asbestos Personal Injury Claims; (b) any other claim including, without limitation, any amounts due to Yarway by the Tyco Released Parties for any reason whatsoever, including amounts due with respect to (i) payments made to the Tyco Released Parties by or on behalf of any of Yarway's insurance providers, (ii) the 2003 sale of certain of Yarway's operating assets to Tyco Valves & Controls, LP, (iii) the 2003 sale by Yarway of the Blue Bell, Pennsylvania manufacturing facility, and (iv) any other asset sales occurring in connection with the 2003 closure of such manufacturing facility; or (c) any acts, omissions, events, or occurrences in connection with the Chapter 11 Case, including, without limitation, any acts, omissions, events

13

or occurrences in connection with (i) the formulation, negotiation, solicitation, confirmation, consummation, administration and implementation of the Plan, and (ii) the transactions and other matters contemplated in the Plan.

**1.1.99. Tyco Representative** means any Representative of Yarway either entitled to indemnification by Tyco or any other Non-Debtor Affiliate or for which Tyco or any other Non-Debtor Affiliate provides insurance coverage.

**1.1.100. Unimpaired** means a Claim or Equity Interest, or a Class of Claims or Equity Interests, as appropriate, that is not Impaired under the Plan.

**1.1.101. United States Trustee** means the United States Trustee appointed under section 591 of title 28 of the United States Code to serve in the District of Delaware.

**1.1.102. Yarway** means Yarway Corporation, a Delaware corporation, and its predecessors, including Gimpel, The Simplex Engineering Company, Yarnall-Waring Co., Yarnall-Waring Company, and Yarway Corporation (a Pennsylvania corporation).

**1.1.103. Yarway Contribution** means a contribution or contributions by or on behalf of Yarway or Reorganized Yarway to the Asbestos Personal Injury Trust of either (a) any Cash held by Yarway as of the Effective Date in excess of $5 million (provided, however, that any Cash, up to $5 million, held by Yarway as of the Effective Date shall be set aside by Yarway and/or Reorganized Yarway, as applicable, in a segregated account as the Net Reserve Funds in accordance with Section 8.5 of the Plan), or (b) such other amount of Cash as may be set forth in the Implementation Steps Plan; provided, however, that any amounts paid by Yarway prior to the Effective Date pursuant to the Order Authorizing Payment of Fees and Expenses of the Proposed Trustee of the Asbestos Personal Injury Trust [Docket No. 806] or other similar order of the Bankruptcy Court shall be deemed part of the Yarway Contribution.

**1.1.104. Yarway Product Lines** means asbestos-containing products, equipment, components, parts, improvements to real property, or materials engineered, designed, marketed, manufactured, constructed, sold, supplied, produced, installed, maintained, serviced, specified, selected, repaired, removed, replaced, released, distributed, or in any way used by Yarway (including, without limitation, Gimpel), including without limitation any of those products manufactured, sold or distributed by (a) Yarway Corporation (a Pennsylvania corporation), the statutory predecessor to Yarway, (b) Gimpel Corporation (f/k/a Triple G Acquisition Corporation), a Delaware corporation, which merged into Yarway in 2000, and/or (c) Gimpel Corporation f/k/a Gimpel Machine Works, Inc.), a Pennsylvania corporation that sold all or substantially all of its assets to Gimpel. For the avoidance of doubt, "Yarway Product Lines" does not include products, equipment, components, parts, improvements to real property, or materials engineered, designed, manufactured, constructed, or produced by Grinnell Corporation, Mueller Company, Anderson, Greenwood & Co., Kunkle Valve Company Inc., The Henry Pratt Company, or any other Non-Debtor Affiliate, or any Representative of any of the foregoing Entities.

      **1.1.105.**    **Yarway Related Parties** means (a) Yarway, (b) Reorganized Yarway, and (c) the Non-Debtor Affiliates.

      **1.1.106.**    **Yarway Release** means the general release of the Tyco Released Parties, including the Tyco Released Party Claims, executed and delivered by Yarway, which shall be substantially in the form attached as <u>Exhibit J</u> hereto.

      **1.2.**    **Ancillary Documents.**  Each of the schedules and exhibits to the Plan, the Disclosure Statement, and the schedules and exhibits to the Disclosure Statement are an integral part of the Plan, and are hereby incorporated by reference and made a part of the Plan, including, without limitation, the Asbestos Personal Injury Trust Documents.

**ARTICLE II.**

**ADMINISTRATIVE EXPENSE AND PRIORITY TAX CLAIMS**

      **2.1.**    **Summary.**  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims described below in Article II of the Plan have not been classified and are excluded from those Classes of Claims described in Article III of the Plan.

      **2.2.**    **Administrative Expense Claims**.

      (a)    General.

      Subject to the Confirmation Order and Sections 2.2(b) – (e) of the Plan, unless otherwise agreed by Yarway and the holder of an Allowed Administrative Expense Claim, each holder of an Allowed Administrative Expense Claim shall receive Cash, to be paid from the Net Reserve Funds, equal to the unpaid portion of such Allowed Administrative Expense Claim on the later of (a) the Effective Date or as soon as practicable thereafter, (b) the first Business Day after the day that is thirty (30) calendar days after the date the Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or (c) the date the Allowed Administrative Expense Claim becomes due and payable according to its terms.  As of the Effective Date, with the exception of requests for payment of Professional Fee Claims, Reorganized Yarway, in its sole and absolute discretion, may settle Administrative Expense Claims in the ordinary course of business without further Bankruptcy Court approval.  A claimant's receipt of the Allowed Amount of its Administrative Expense Claim shall be in full satisfaction, settlement, release, extinguishment, and discharge of such Claim, on the date such payment is received.

      (b)    Bar Date for Administrative Expense Claims.

      Except as provided in Sections 2.2(c) - (e) of the Plan, requests for payment of Administrative Expense Claims must be filed with the Bankruptcy Court and served on counsel for Reorganized Yarway no later than the Administrative Expense Claims Bar Date.  Holders of Administrative Expense Claims (including, without limitation, Professionals asserting Professional Fee Claims and the holders of any Claims for federal, state or local taxes) that are required to file a request for payment of such Claims and that do not file such requests by the Administrative Expense Claims Bar Date (or, in the case of tax claims, such later date as may be

15

applicable pursuant to section 2.2(e) below) shall be forever barred from asserting such Claims against Yarway, Reorganized Yarway, any of their Affiliates, or any of their respective property.

The notice of the Effective Date to be delivered pursuant to Bankruptcy Rules 2002 and 3020(c) shall set forth the Administrative Expense Claims Bar Date and constitute notice thereof. Reorganized Yarway, the Asbestos Personal Injury Trust, and any other party in interest will have forty-five (45) days after the Administrative Expense Claims Bar Date to review and object to such Claims, provided that such forty-five (45) day period of review may be extended by the Bankruptcy Court upon the request of Reorganized Yarway or the Asbestos Personal Injury Trust. Unless a party in interest timely objects to an Administrative Expense Claim, such Claim (other than a Professional Fee Claim) shall be deemed Allowed in the amount requested. In the event that a party in interest timely objects to an Administrative Expense Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court shall determine whether such Administrative Expense Claim should be Allowed and, if so, in what amount.

(c)     Asbestos Personal Injury Trust Expenses.

As of the Effective Date, liability for all Asbestos Personal Injury Trust Expenses, whether incurred before or after the Effective Date, shall automatically, and without further act, deed or court order, be assumed by the Asbestos Personal Injury Trust and resolved in accordance with the terms, provisions and procedures of the Asbestos Personal Injury Trust Agreement.

(d)     Professionals.

All Professionals or other entities requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) and/or section 1103 of the Bankruptcy Code for services rendered before the Effective Date (including, without limitation, any compensation requested by any Professional or any other entity for making a substantial contribution in the Chapter 11 Case) shall file and serve on (a) counsel to Reorganized Yarway, (b) counsel to Tyco, and (c) the United States Trustee, an application for final allowance of compensation and reimbursement of expenses no later than the Administrative Expense Claims Bar Date. Objections to Professional Fee Claims must be filed and served on (a) counsel to Reorganized Yarway, (b) counsel to Tyco, (c) the United States Trustee and (d) the Professional(s) to whose application the objections are addressed, no later than forty-five (45) days after the Administrative Expense Claims Bar Date. Upon approval by the Bankruptcy Court of compensation and expenses set forth in any application therefor submitted by a Professional, Reorganized Yarway shall pay such compensation and expenses from the Net Reserve Funds.

(e)     Administrative Tax Claims.

All requests for payment of Administrative Expense Claims by a governmental unit for taxes (and for interest and/or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date ("Post-Petition Tax Claims") and for which no bar date

16

has otherwise been previously established, must be filed on or before the later of (i) the Administrative Expense Claims Bar Date; or (ii) ninety (90) days following the filing with the applicable governmental unit of the tax return for such taxes for such tax year or period. Any holder of any Post-Petition Tax Claim that is required to file a request for payment of such taxes and does not file such a Claim by the applicable bar date shall be forever barred from asserting any such Post-Petition Tax Claim against Yarway, Reorganized Yarway, or their property, regardless of whether any such Post-Petition Tax Claim is deemed to arise prior to, on, or subsequent to the Effective Date.

2.3. **Priority Tax Claims**. Except to the extent that the holder of an Allowed Priority Tax Claim has been paid by Yarway prior to the Effective Date on account of such Priority Tax Claim or agrees to a different treatment with respect thereto, each holder of an Allowed Priority Tax Claim shall, in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, receive in full satisfaction, settlement and discharge of and in exchange for such Allowed Priority Tax Claim Cash from the Net Reserve Funds in an amount equal to the unpaid portion of such Allowed Priority Tax Claim, on the latest of:  (a) the Effective Date; (b) the date such Priority Tax Claim becomes an Allowed Claim, or as soon thereafter as is practicable; and (c) the date such Allowed Priority Tax Claim becomes due and payable under applicable non-bankruptcy law.

## ARTICLE III.

## TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims against and Equity Interests in Yarway.

3.1. **Classification**. A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of the Class, and a Claim or Equity Interest is classified in a different Class to the extent the Claim or Equity Interest qualifies within the description of that different Class. The categories of Claims and Equity Interests listed below, other than Administrative Expense Claims and Priority Tax Claims, are classified for all purposes, including voting, confirmation, and distribution pursuant to the Plan, as follows:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Priority Claims | Unimpaired | No (conclusively presumed to accept) |
| Class 2 | Secured Claims | Unimpaired | No (conclusively presumed to accept) |
| Class 3 | General Unsecured Claims | Unimpaired | No (conclusively presumed to accept) |
| Class 4 | Asbestos Personal Injury Claims | Impaired | Yes |
| Class 5 | Intercompany Claims | Impaired | Yes |
| Class 6 | Equity Interests | Impaired | No (conclusively deemed to reject) |

3.2. **Treatment and Classification of Claims and Equity Interests**. For purposes of all confirmation matters, including, without limitation, voting on, confirmation of,

17

and Distributions under, the Plan, and except as otherwise provided herein, all Claims against (other than Administrative Expense Claims and Priority Tax Claims, which are not classified) and Equity Interests in Yarway shall be classified and treated in the manner set forth below.

**3.2.1.   Class 1 – Priority Claims**.  Except to the extent a holder of an Allowed Priority Claim has been paid prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Claim shall receive, in full satisfaction, settlement, and discharge of, and in exchange for such Priority Claim, Cash to be paid from the Net Reserve Funds in an amount equal to the unpaid portion of such Allowed Priority Claim on the later of: (a) the Effective Date; and (b) the date the Priority Claim becomes an Allowed Priority Claim, or as soon thereafter as practicable.  All Allowed Priority Claims not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof.

Class 1 is Unimpaired under the Plan.  Each holder of a Priority Claim is deemed to have accepted the Plan and is therefore not entitled to vote to accept or reject the Plan.

**3.2.2.   Class 2 –Secured Claims**.  Except to the extent a holder of a Secured Claim agrees to different treatment of that Secured Claim, each holder of an Allowed Secured Claim shall have such Secured Claim reinstated pursuant to section 1124(2) of the Bankruptcy Code such that the Secured Claim is rendered Unimpaired and, as a result, such treatment leaves unaltered the legal, equitable, and contractual rights to which such Allowed Secured Claim entitles the holder of such Claim.  The reinstatement of any Allowed Secured Claim pursuant to this section shall entitle the holder of such Allowed Secured Claim to postpetition interest on account of such Allowed Secured Claim at the rate provided by any applicable contract, if such contract so specifies, or the Federal Judgment Rate in effect on the Effective Date if not otherwise specified in an applicable contract; provided that no holder of an Allowed Secured Claim shall receive aggregate Distributions on account of such Secured Claim that exceed the value of Yarway's interest in the property that secures such Secured Claim.  The failure of Yarway or any other party in interest to file an objection, prior to the Effective Date, with respect to any Secured Claim that is reinstated hereunder shall be without prejudice to the rights of Reorganized Yarway or any other party in interest to contest or otherwise defend against such Secured Claim in an appropriate forum when and if such Secured Claim is sought to be enforced.  Any amount that Yarway may be required to pay pursuant to section 1124(2) of the Bankruptcy Code on account of any such reinstated Allowed Secured Claim shall be paid in full, in Cash from the Net Reserve Funds, on, or as soon as practicable after, the latest of: (a) the Effective Date, (b) the date on which such Secured Claim becomes an Allowed Secured Claim, (c) the date such Secured Claim becomes due and payable according to its terms, or (d) such other date as mutually may be agreed to by and between the holder of such Secured Claim and Yarway or Reorganized Yarway.

Class 2 is Unimpaired under the Plan.  Each holder of a Secured Claim is deemed to have accepted the Plan and is therefore not entitled to vote to accept or reject the Plan.

**3.2.3.   Class 3 – General Unsecured Claims**.  Except to the extent a holder of an Allowed General Unsecured Claim agrees to different treatment of that General Unsecured Claim, each holder of an Allowed General Unsecured Claim shall be paid in full, in

18

Cash from the Net Reserve Funds, on, or as soon as practicable after, the latest of: (a) the Effective Date, (b) the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim, (c) the date such General Unsecured Claim becomes due and payable according to its terms, or (d) such other date as mutually may be agreed to by and between the holder of such General Unsecured Claim and Yarway or Reorganized Yarway.

Class 3 is Unimpaired under the Plan. Each holder of a General Unsecured Claim is deemed to have accepted the Plan and is therefore not entitled to vote to accept or reject the Plan.

**3.2.4.   Class 4 – Asbestos Personal Injury Claims**.  As of the Effective Date, liability for all Asbestos Personal Injury Claims shall automatically, and without further act, deed or court order, be channeled exclusively to and assumed by the Asbestos Personal Injury Trust in accordance with, and to the extent set forth in, Articles VIII and X below, the applicable Plan Documents and the Confirmation Order. Each Asbestos Personal Injury Claim shall be resolved in accordance with the terms, provisions and procedures of the Asbestos Personal Injury Trust Agreement and the Asbestos Personal Injury Trust Distribution Procedures. The Asbestos Personal Injury Trust shall be funded in accordance with the provisions of Section 8.3 below. The sole recourse of the holder of an Asbestos Personal Injury Claim on account of such Asbestos Personal Injury Claim shall be to the Asbestos Personal Injury Trust, and each such holder shall have no right whatsoever at any time to assert its Asbestos Personal Injury Claim against any Protected Party.

Class 4 is Impaired under the Plan. Each holder of an Asbestos Personal Injury Claim is entitled to vote to accept or reject the Plan.

**3.2.5.   Class 5 – Intercompany Claims**.  As part of the Tyco Contribution, each holder of an Allowed Intercompany Claim shall receive, in full satisfaction, settlement and discharge of and in exchange for such Intercompany Claim, Cash in the amount of $10.

Class 5 is Impaired under the Plan. Each holder of an Intercompany Claim is entitled to vote to accept or reject the Plan.

**3.2.6.   Class 6 – Equity Interests**.  On the Effective Date, the Equity Interests in Yarway shall be cancelled, annulled and extinguished.

Class 6 is Impaired under the Plan. Each holder of an Equity Interest is deemed to have rejected the Plan and is therefore not entitled to vote to accept or reject the Plan.

## ARTICLE IV.

## ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY INTERESTS

**4.1.     Classes Entitled to Vote**. Class 4 is Impaired, and holders of Asbestos Personal Injury Claims in Class 4 may be entitled to a distribution from the Asbestos Personal Injury Trust in accordance with the Asbestos Personal Injury Trust Distribution Procedures. Class 5 is Impaired, and each holder of an Allowed Intercompany Claim is entitled to receive a

19

distribution as set forth in Section 3.2.5 of the Plan. As a result, each holder of an Asbestos Personal Injury Claim in Class 4 and each holder of an Intercompany Claim in Class 5 is entitled to vote to accept or reject the Plan.

        **4.2.**     **Class Acceptance Requirement**. Acceptance of the Plan by Class 4 shall be determined in accordance with sections 524(g) and 1126 of the Bankruptcy Code and the terms of the Solicitation Procedures Order. Acceptance of the Plan by Class 5 shall be determined in accordance with section 1126 of the Bankruptcy Code and the Solicitation Procedures Order.

        **4.3.**     **Issuance of Injunction Pursuant to Section 524(g) of the Bankruptcy Code**. The Bankruptcy Court shall be asked to issue the Asbestos Personal Injury Channeling Injunction if the Plan has been accepted by at least two-thirds (2/3) in amount of those holders of Class 4 Claims actually voting on the Plan, in accordance with section 1126(c) of the Bankruptcy Code, and seventy-five percent (75%) in number of those holders of Class 4 Claims actually voting on the Plan, in accordance with section 524(g)(2)(B)(ii)(IV)(bb) of the Bankruptcy Code. The amount of the Claim for each Class 4 Claim holder for voting purposes shall be as set forth in the Solicitation Procedures Order.

        **4.4.**     **Cramdown**. With respect to any Impaired Class of Claims or Equity Interests that fails to accept the Plan in accordance with section 1129(a) of the Bankruptcy Code, the Plan Proponents request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code with respect to such non-accepting Classes, in which case or cases the Plan shall constitute a motion for such relief, which shall be considered at the Confirmation Hearing.

        **4.5.**     **Acceptance by Unimpaired Classes**. Class 1 (Priority Claims), Class 2 (Secured Claims), and Class 3 (General Unsecured Claims) are Unimpaired under the Plan and are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, solicitation of votes of holders of Claims in Class 1, Class 2 or Class 3 is not required.

        **4.6.**     **Rejection by Class 6**. Class 6 (Equity Interests) is Impaired under the Plan and is not entitled to any distribution under the Plan. Holders of Equity Interests in Class 6 are conclusively deemed to reject the Plan pursuant to section 1126(g), and votes shall not be solicited from such holders.

**DISTRIBUTIONS UNDER THE PLAN
ON ACCOUNT OF CLAIMS OTHER THAN ASBESTOS PERSONAL INJURY
CLAIMS**

        **5.1.**     **Distributions**. Other than with respect to payments to be made on account of Asbestos Personal Injury Claims and Asbestos Personal Injury Trust Expenses from the Asbestos Personal Injury Trust, Reorganized Yarway shall make all Distributions required to be made under the Plan as provided under this Article V. All distributions to be made by the Asbestos Personal Injury Trust shall be made in accordance with the terms of the Asbestos Personal Injury Trust Agreement and the Asbestos Personal Injury Trust Distribution Procedures.

20

**5.2.** **Record Date for Holders of Claims**.  Except as otherwise provided in a Final Order, the transferees of Claims that are transferred pursuant to Rule 3001 of the Bankruptcy Rules on or prior to the Distribution Record Date shall be treated as the holders of such Claims for all purposes, notwithstanding that any period provided by Rule 3001 for objecting to such transfer has not expired by the Distribution Record Date.

**5.3.** **Date of Distributions**.  Except as otherwise provided herein, any Distributions and deliveries to be made hereunder on account of Allowed Claims (other than Asbestos Personal Injury Claims) shall be made (i) on the Effective Date or as soon thereafter as is practicable for Claims that are Allowed as of the Effective Date or (ii) within thirty (30) days of the date on which a Claim becomes Allowed if such Claim becomes Allowed after the Effective Date.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on, or as soon as reasonably practicable after, the next succeeding Business Day, but shall be deemed to have been completed as of the required date, and no interest shall accrue or be payable on any such payment on the basis that such payment was not actually made on the required date.

**5.4.** **Postpetition Interest on Claims**.  Except as otherwise provided for in this Plan (including Section 3.2.2 of this Plan), the Plan Documents or the Confirmation Order, or any contract, instrument, release, settlement or other agreement entered into in connection with the Plan, or unless required by applicable bankruptcy law, interest accruing on or after the Petition Date on account of any Claim shall not be paid.

**5.5.** **Means of Cash Payment**.  At the option of Yarway or Reorganized Yarway, as applicable, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in any applicable agreement.

**5.6.** **Delivery of Distributions**.  All Distributions to any holder of an Allowed Claim shall be made at the address of such holder as set forth on (i) the Schedules filed with the Bankruptcy Court, (ii) a proof of claim filed by or on behalf of such holder in the Chapter 11 Case, or (iii) the books and records of Yarway, unless Yarway or Reorganized Yarway has been notified in writing of a change of address.

If any holder's Distribution is returned as undeliverable, then no further Distributions to such holder shall be made unless and until Reorganized Yarway is notified of such holder's then-current address, at which time any missed Distribution shall be made to such holder without interest.  A Cash Distribution that is not claimed by the expiration of six (6) months from the date that such Distribution was made – along with any further Distributions withheld under this Section – shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall revest in Reorganized Yarway, and the Claim of any holder to such Distributions or any further Distributions shall be discharged and forever barred.  Nothing contained in the Plan shall require Yarway or Reorganized Yarway to attempt to locate any holder of an Allowed Claim.

**5.7.** **Time Bar to Cash Payments**.  Checks issued by Reorganized Yarway in respect of Distributions on Allowed Claims shall be null and void if not presented for payment within ninety (90) days after the date of issuance thereof.  Requests for reissuance of any check

shall be made in writing to Reorganized Yarway by the holder of the Allowed Claim to whom such check originally was issued on or before thirty (30) days after the expiration of the ninety (90) day period following the date of issuance of such check.  All funds held on account of a check voided in accordance with this Section 5.7 shall be returned to the Net Reserve Funds, and the Claim of any holder to such Distributions shall be discharged and forever barred.

   **5.8. Prepayment of Claims**.  Except as otherwise provided in the Plan, the Plan Documents, or the Confirmation Order, Reorganized Yarway shall have the right to prepay, without penalty, all or any portion of an Allowed Claim at any time; <u>provided</u>, that any such prepayment shall not violate or otherwise prejudice the relative priorities among the Classes of Claims.

   **5.9. Fractional Cents**.  No payment of fractional cents will be made pursuant to the Plan.  Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made will reflect a rounding of such fraction to the nearest whole penny (up or down), with fractions of more than half a penny being rounded up and fractions of half of a penny or less being rounded down.

   **5.10. Setoff and Recoupment**.  Yarway or Reorganized Yarway (or the Asbestos Personal Injury Trust to the extent it pertains to an Asbestos Personal Injury Claim) may, but shall not be required to, set off and/or recoup against any Claim (for purposes of determining the Allowed Amount of such Claim on which a Distribution shall be made), any claims of any nature whatsoever that Yarway or Reorganized Yarway (or the Asbestos Personal Injury Trust to the extent it pertains to an Asbestos Personal Injury Claim) may have against the holder of such Claim, and the failure to do so shall not constitute a waiver or release by Yarway or Reorganized Yarway of any such claims that Yarway or Reorganized Yarway may have against the holder of such Claim.

## ARTICLE VI.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

   **6.1. General Treatment**.  Yarway shall reject, as of the Effective Date, any and all Executory Contracts to which Yarway is a party, except for:  (a) any Executory Contracts specifically listed on <u>Exhibit F</u> hereto, which shall be assumed, and (b) any Executory Contracts specifically assumed or assumed and assigned pursuant to a Final Order entered on or before the Effective Date.  Yarway may, at any time on or before the Effective Date, amend <u>Exhibit F</u> hereto to delete therefrom, or add thereto, any Executory Contract.  Yarway shall provide notice of any such amendment to the parties to the Executory Contract(s) affected thereby and to the parties on any master service list established by the Bankruptcy Court in the Chapter 11 Case.  The fact that any contract or lease is listed on <u>Exhibit F</u> shall not constitute or be construed to constitute an admission that such contract or lease is an executory contract or unexpired lease within the meaning of section 365 of the Bankruptcy Code or that Yarway or any successor in interest to Yarway (including Reorganized Yarway) has any liability thereunder.

The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections or assumptions, as the case may be, pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

**6.2.    Cure of Defaults**.  Any monetary defaults under each Executory Contract to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim in Cash on the later of (a) the Effective Date or (b) the date on which such Cure Claim is Allowed, or on such other terms as the parties to any such Executory Contract may otherwise agree.  In the event of a dispute regarding: (a) the existence or amount of the Cure Claim; (b) the ability of Yarway or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract to be assumed, or (c) any other matter pertaining to assumption, the payments required by section 365(b)(1) of the Bankruptcy Code in respect of Cure Claims shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption.

**6.3.    Bar to Rejection Damages**.  In the event that the rejection of an Executory Contract by Yarway or Reorganized Yarway pursuant to the Plan results in damages to the non-Debtor party or parties to such Executory Contract, a claim for such damages shall be forever barred and shall not be enforceable against Yarway, Reorganized Yarway, any of their Affiliates, or any of their respective properties or interests in property, and the non-Debtor party or parties to such Executory Contract shall be barred from receiving any Distribution under the Plan on account of such Claim, unless a Proof of Claim with respect to such damages is filed with the Bankruptcy Court and served upon counsel for Yarway or Reorganized Yarway, as applicable, and counsel for Tyco on or before (a) if such Executory Contract is rejected pursuant to Section 6.1 above, thirty (30) days after entry of the Confirmation Order; or (b) if such Executory Contract is rejected pursuant to a Final Order of the Bankruptcy Court granting a motion filed by Yarway to reject such Executory Contract, thirty (30) days after entry of such order.

## ARTICLE VII.

## PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS OTHER THAN ASBESTOS PERSONAL INJURY CLAIMS AND PROFESSIONAL FEE CLAIMS

**7.1.    Disputed Claims**.  All Disputed Claims against Yarway other than Asbestos Personal Injury Claims and Professional Fee Claims shall be subject to the provisions of this Article VII.  All Asbestos Personal Injury Claims shall be resolved by the Asbestos Personal Injury Trust in accordance with Section 8.3 below, the Asbestos Personal Injury Trust Agreement and the Asbestos Personal Injury Trust Distribution Procedures.  Only the Asbestos Personal Injury Trust will have the right to object to and/or resolve Asbestos Personal Injury Claims.  All Asbestos Personal Injury Claims must be submitted solely to the Asbestos Personal Injury Trust for payment, which shall be in accordance with the Asbestos Personal Injury Trust Agreement and the Asbestos Personal Injury Trust Distribution Procedures.  Professional Fee Claims shall be determined and, if Allowed, paid by Reorganized Yarway in accordance with Section 2.2(d) of the Plan.

**7.2.    Objection to and Estimation of Claims**.  Except as otherwise provided herein, Yarway or Reorganized Yarway, as the case may be, shall be entitled to file objections to Claims that have been brought in the Bankruptcy Court or should properly have been brought in the Bankruptcy Court but were brought in other forums (other than Asbestos Personal Injury Claims), on or before the date that is sixty (60) days after the Effective Date (unless such day is not a Business Day, in which case such deadline shall be the next Business Day thereafter), as the same may be extended from time to time by the Bankruptcy Court.  In addition, Yarway or Reorganized Yarway, as the case may be, may before the expiration of such period request that the Bankruptcy Court estimate any contingent, unliquidated or Disputed Claim (not including any Asbestos Personal Injury Claim) for any reason pursuant to section 502(c) of the Bankruptcy Code, regardless of whether Yarway previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate such Claim at any time, including, without limitation, during the pendency of litigation concerning any objection to any Claim or of any appeal relating thereto. Yarway and Reorganized Yarway shall be authorized to settle, compromise, withdraw or litigate to judgment such objections without further approval of the Bankruptcy Court.

**7.3.    Payments and Distributions with Respect to Disputed Claims**. Notwithstanding any other provision hereof, no payments or Distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order and the Disputed Claim, or some portion thereof, has become an Allowed Claim.

## ARTICLE VIII.

## MEANS FOR IMPLEMENTATION OF THE PLAN

**8.1.    Generally**.  On and after the Confirmation Date, Yarway shall be empowered and authorized to take or cause to be taken, prior to the Effective Date, all actions necessary to enable it to implement the provisions of the Plan, including, without limitation, the creation of the Asbestos Personal Injury Trust and the preparations for the transfer of the Asbestos Personal Injury Trust Assets to the Asbestos Personal Injury Trust.  From and after the Effective Date, Reorganized Yarway shall be governed pursuant to the Amended Certificate of Incorporation and Amended By-Laws.

**8.2.    Transactions on the Effective Date**.

(a)    On the Effective Date, the following shall be deemed for all purposes to have occurred simultaneously:

(i)    the establishment of the Asbestos Personal Injury Trust;

(ii)    the making of the Yarway Contribution and the Tyco Contribution to the Asbestos Personal Injury Trust; and

(iii)    the vesting in the Asbestos Personal Injury Trust of the Asbestos Personal Injury Trust Assets, as more fully described in, and subject to the conditions set forth in, Section 8.3 below.

24

(b)     Also on the Effective Date, but after the occurrence of the events in each of Section 8.2(a)(i) through 8.2(a)(iii) herein, the following events shall be deemed for all purposes to have occurred simultaneously:

       (i)     the effectiveness of the Amended Certificate of Incorporation and Amended By-Laws of Reorganized Yarway;

       (ii)     the appointment of the individual who will act as both the officer and the director of Reorganized Yarway, as identified in a notice to be filed by the Debtor no later than two (2) days prior to the deadline established to accept or reject the Plan; and

       (iii)     any Distributions required to be made on the Effective Date (or as soon thereafter as is reasonably practicable).

(c)     Unless the Plan or the Confirmation Order provide otherwise, actions required to be taken on the Effective Date or as soon thereafter as is reasonably practicable shall be deemed to have been made on the Effective Date.

(d)     On or as soon as is reasonably practicable after the Effective Date, the Adversary Proceeding shall be dismissed.

### 8.3.     The Asbestos Personal Injury Trust.

(a)     <u>Creation of the Asbestos Personal Injury Trust</u>.  On the Effective Date, the Asbestos Personal Injury Trust shall be created in accordance with the Plan Documents, the Asbestos Personal Injury Trust Documents, and section 524(g) of the Bankruptcy Code.  The purpose of the Asbestos Personal Injury Trust shall be to assume all liabilities and responsibility for all Asbestos Personal Injury Claims, and, among other things, to: (a) direct the processing, liquidation, and payment of all compensable Asbestos Personal Injury Claims in accordance with this Plan, the Asbestos Personal Injury Trust Agreement, the Asbestos Personal Injury Trust Distribution Procedures and the Confirmation Order; (b) preserve, hold, manage, and maximize the assets of the Asbestos Personal Injury Trust for use in paying and satisfying Asbestos Personal Injury Claims; and (c) qualify at all times as a qualified settlement fund.  The Asbestos Personal Injury Trust shall use the Asbestos Personal Injury Trust's assets and income to resolve Asbestos Personal Injury Claims in accordance with the Asbestos Personal Injury Trust Agreement and the Asbestos Personal Injury Trust Distribution Procedures in such a way that holders of Asbestos Personal Injury Claims are treated fairly, equitably, and reasonably in light of the finite assets available to satisfy such claims, and shall otherwise comply in all respects with the requirements of a trust set forth in section 524(g)(2)(B) of the Bankruptcy Code.  On the Effective Date, all right, title, and interest in and to the Asbestos Personal Injury Trust Assets, and any proceeds thereof, will be transferred to, and vested in, the Asbestos Personal Injury Trust, free and clear of all Claims, Demands, Equity Interests, Encumbrances, and other interests of any Entity, without any further action of the Bankruptcy Court or any Entity, but subject to the remaining provisions of this Section 8.3.

(b)     Appointment of Asbestos Personal Injury Trustee(s).  Not later than ten (10) days prior to the Confirmation Hearing, the Asbestos Claimants Committee and the Future Claimants' Representative shall nominate the individual(s) who will serve as the initial Asbestos Personal Injury Trustee(s).  On the Effective Date, such individual(s) shall be appointed as the Asbestos Personal Injury Trustee(s) pursuant to the Plan, the Confirmation Order, and the Asbestos Personal Injury Trust Agreement.  All subsequent Asbestos Personal Injury Trustees shall be appointed in accordance with the terms of the Asbestos Personal Injury Trust Agreement.  For purposes of performing the duties and fulfilling the obligations under the Asbestos Personal Injury Trust Agreement and the Plan, the Asbestos Personal Injury Trustee(s) shall be deemed to be a party or parties in interest within the meaning of section 1109(b) of the Bankruptcy Code.

(c)     Appointment of Post-Effective Date Future Claimants' Representative. On the Effective Date, James L. Patton, Jr. shall be appointed, pursuant to the Plan, the Confirmation Order, and the Asbestos Personal Injury Trust Agreement, as the Post-Effective Date Future Claimants' Representative.  The Post-Effective Date Future Claimants' Representative shall have the functions, duties, and rights provided in, and shall serve in accordance with, the Asbestos Personal Injury Trust Agreement.  In addition to the foregoing, the Post-Effective Date Future Claimants' Representative also may, at his option, participate in any: (a) appeal of the Confirmation Order; (b) hearing on a Professional Fee Claim; and (c) adversary proceeding pending on the Effective Date to which the Future Claimants' Representative was a party.  Successor Post-Effective Date Future Claimants' Representatives will be appointed as provided in the Asbestos Personal Injury Trust Agreement.

(d)     Appointment of Asbestos Personal Injury Trust Advisory Committee Members.  Not later than ten (10) days prior to the Confirmation Hearing, the Asbestos Claimants Committee shall nominate five (5) individuals to serve as the initial members of the Asbestos Personal Injury Trust Advisory Committee.  The Confirmation Order shall constitute an order of the Bankruptcy Court appointing the initial members of the Asbestos Personal Injury Trust Advisory Committee.  The Asbestos Personal Injury Trust Advisory Committee shall have the functions, duties, and rights provided in, and shall serve in accordance with, the Asbestos Personal Injury Trust Agreement.  Successor members of the Asbestos Personal Injury Trust Advisory Committee will be appointed as provided in the Asbestos Personal Injury Trust Agreement.

(e)     Transfer of Claims and Demands to the Asbestos Personal Injury Trust.  In consideration for the property transferred to the Asbestos Personal Injury Trust, on the Effective Date, all liabilities, obligations, and responsibilities relating to all present and future Asbestos Personal Injury Claims, including, without limitation, Demands, shall be transferred and channeled to the Asbestos Personal Injury Trust and shall be satisfied solely by the assets held by the Asbestos Personal Injury Trust.  The Asbestos Personal Injury Trust shall have no liability for any Claims and Demands other than Asbestos Personal Injury Claims and Asbestos Personal Injury Trust Expenses, and no Claims other than Asbestos Personal Injury Claims and Asbestos Personal Injury Trust Expenses shall be transferred and channeled to the Asbestos Personal Injury Trust.

(f)    Transfer of Rights and Defenses Related to Asbestos Personal Injury Claims.  With the exception of those claims released by Yarway pursuant to Section 10.5 of the Plan and/or in the Yarway Release, on the Effective Date all claims, defenses, rights and Causes of Action of Yarway and Reorganized Yarway relating to Asbestos Personal Injury Claims shall be transferred and assigned to the Asbestos Personal Injury Trust.  In accordance with section 1123(b) of the Bankruptcy Code, the Asbestos Personal Injury Trust shall retain and may enforce such claims, defenses, rights, and Causes of Action and shall retain and may enforce all defenses and counterclaims to all Claims or Demands asserted against the Asbestos Personal Injury Trust, including, but not limited to, setoff, recoupment, and any rights under section 502(d) of the Bankruptcy Code; provided, however, that no such claims, defenses, Causes of Action, or counterclaims may be asserted against any Protected Party.  The Asbestos Personal Injury Trust shall be deemed to be the appointed representative of Yarway and Reorganized Yarway, and may, pursue, litigate, compromise, and settle any rights, claims, or Causes of Action transferred to it, as appropriate.

(g)    Asbestos Personal Injury Claimant Release.  In connection with the resolution of Asbestos Personal Injury Claims, the Asbestos Personal Injury Trust Distribution Procedures shall provide on the Effective Date, and shall not thereafter cease to provide, that all holders of Asbestos Personal Injury Claims shall execute an Asbestos Personal Injury Claimant Release as a precondition to receiving payment on account of their Asbestos Personal Injury Claims from the Asbestos Personal Injury Trust.  The Asbestos Personal Injury Claimant Release shall be substantially in the form attached to hereto as Exhibit I, and shall not be amended after the Effective Date without the consent of Tyco and Yarway.  The Asbestos Personal Injury Trust Distribution Procedures shall also provide that, in addition to the Asbestos Personal Injury Claimant Release, all holders of Asbestos Personal Injury Claims shall execute a release with respect to the Asbestos Personal Injury Trust and its related parties in a form to be determined by the Asbestos Personal Injury Trustee(s) with the consent of the Asbestos Personal Injury Trust Advisory Committee and the Post-Effective Date Future Claimants' Representative.

(h)    Consideration for Asbestos Personal Injury Channeling Injunction.  The release of the Intercompany Claims by the Non-Debtor Affiliates, and the assignment, transfer, and conveyance of the other Asbestos Personal Injury Trust Assets to the Asbestos Personal Injury Trust on the Effective Date supports the imposition of the Asbestos Personal Injury Channeling Injunction in favor of all of the Protected Parties as of the Effective Date.

(i)    Expiration of Obligations to Fund the Tyco Contribution and the Yarway Contribution.  Notwithstanding any other provision of the Plan, the obligation of Tyco and Yarway to make the Tyco Contribution or Yarway Contribution, respectively, shall expire if (a) the Confirmation Date does not occur by June 30, 2015 or (b) the Effective Date does not occur by September 15, 2016, unless Tyco, Yarway, the Asbestos Claimants Committee, and the Future Claimants' Representative otherwise agree in writing.

27

(j)      Books and Records.  On the Effective Date, the Asbestos Records Cooperation Agreement shall become effective and the Asbestos Records shall be treated in accordance therewith.

(k)      Institution and Maintenance of Legal and Other Proceedings.  From and after the Effective Date, the Asbestos Personal Injury Trust shall be empowered and entitled, in its sole and absolute discretion and at its own expense, to pursue, compromise or settle all legal actions and other proceedings related to any asset, liability, or responsibility of the Asbestos Personal Injury Trust that is not released pursuant to the Plan.

(l)      Asbestos Personal Injury Trust Expenses.  The Asbestos Personal Injury Trust shall pay all Asbestos Personal Injury Trust Expenses from the Asbestos Personal Injury Trust Assets.  Neither the Plan Proponents, the Debtor's Estate, Reorganized Yarway, nor any other Protected Parties shall have any obligation to pay any Asbestos Personal Injury Trust Expenses or any other liabilities of the Asbestos Personal Injury Trust.  The Asbestos Personal Injury Trust shall promptly pay all Asbestos Personal Injury Trust Expenses incurred by Reorganized Yarway for any and all liabilities, costs, or expenses as a result of taking any action on behalf of, and at the direction of, the Asbestos Personal Injury Trust.

(m)      Investment Policy.  Pursuant to the Asbestos Personal Injury Trust Agreement, all monies held in the Asbestos Personal Injury Trust shall be invested, subject to the investment limitations and provisions enumerated in the Asbestos Personal Injury Trust Agreement, and shall not be limited to the types of investments described in section 345 of the Bankruptcy Code.

(n)      Excess Asbestos Personal Injury Trust Assets.  To the extent there are any Asbestos Personal Injury Trust Assets remaining at such time as the Asbestos Personal Injury Trust is dissolved, such excess Asbestos Personal Injury Trust Assets shall be transferred to a charity or charities for such charitable purposes as the Asbestos Personal Injury Trustee(s), in his, her, or their reasonable discretion, shall determine, provided that, if practicable, the charity or charities to which such excess Asbestos Personal Injury Trust Assets are transferred shall be related to the treatment of, research on, or the relief of suffering of individuals suffering from asbestos-related disorders.

(o)      Dissolution of Asbestos Personal Injury Trust.  Upon dissolution of the Asbestos Personal Injury Trust: (a) the Asbestos Personal Injury Trustee(s), members of the Asbestos Personal Injury Trust Advisory Committee and the Post-Effective Date Future Claimants' Representative shall be released and discharged from all further authority, duties, responsibilities, and obligations relating to and arising from and in connection with the Chapter 11 Case; and (b) the Asbestos Personal Injury Trust Advisory Committee shall be dissolved.

**8.4.    Amended Certificate of Incorporation and By-Laws**.  The Amended Certificate of Incorporation and Amended By-Laws shall contain such provisions as are necessary to satisfy the provisions of the Plan and, to the extent necessary, to prohibit the

28

issuance of nonvoting equity securities as required by section 1123(a)(6) of the Bankruptcy Code.  Notwithstanding the foregoing, the Amended Certificate of Incorporation and Amended By-Laws may be amended after the Effective Date as permitted by applicable law.  Except as otherwise provided herein, such Amended Certificate of Incorporation and Amended By-Laws shall contain indemnification provisions applicable to the officer and employees of Reorganized Yarway and such other Entities as may be deemed appropriate in the discretion of Reorganized Yarway and will provide for the authorization and issuance of the Reorganized Yarway Common Stock.

        **8.5.**    **Net Reserve Funds**.  No later than the Effective Date, Yarway shall establish a bank account for the sole purpose of holding the Net Reserve Funds.  The Net Reserve Funds shall be used for the sole purpose of satisfying in full all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Claims, Allowed Secured Claims, and Allowed General Unsecured Claims, to the extent such Claims are not otherwise addressed or satisfied in accordance with the Plan, including the payment of any interest on such Claims that may be allowed under the Plan or required to be paid by the Bankruptcy Code.  Any Net Reserve Funds remaining after the satisfaction in full of all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Claims, Allowed Secured Claims, and Allowed General Unsecured Claims, including the payment of any interest on such Claims that may be allowed under the Plan or required to be paid by the Bankruptcy Code, shall be paid by Reorganized Yarway to Tyco or its designee as indicated in the Implementation Steps Plan.

        **8.6.**    **Reorganized Yarway Common Stock**.  On the Effective Date, all of the existing Equity Interests in Yarway shall be cancelled, annulled, and extinguished, and 100% of the Reorganized Yarway Common Stock shall be authorized and issued to the Asbestos Personal Injury Trust.

        **8.7.**    **Corporate Governance of Reorganized Yarway**.  On the Effective Date, (a) the current officers and directors of Yarway shall be deemed to resign from their respective positions by operation of the Plan and (b) the individual identified in a notice to be filed by the Debtor no later than two (2) days prior to the deadline established to accept or reject the Plan shall be appointed to serve as the both the officer and the director of Reorganized Yarway.

        **8.8.**    **Operations of the Debtor Between Confirmation and the Effective Date**.  The Debtor shall continue to operate as a debtor and debtor-in-possession during the period from the Confirmation Date through and until the Effective Date.

        **8.9.**    **Corporate Action**.  All matters provided for under the Plan involving the corporate structure of Yarway or Reorganized Yarway, or any corporate action to be taken by, or required of Yarway or Reorganized Yarway, shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by the stockholders or directors of any of such entities.

        **8.10.**    **Effectuating Documents; Further Transactions**.  Any officer, member or manager of or director of Yarway or Reorganized Yarway, as the case may be, shall be, and hereby is, authorized to execute, deliver, file, and record such contracts, instruments, releases, indentures, certificates, and other agreements or documents, and take such other actions as may

be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Secretary or other appropriate officer of Yarway is hereby authorized to certify or attest to any of the foregoing, if necessary.

Yarway and Reorganized Yarway, and all other parties, including all holders of Claims entitled to receive Distributions under the Plan, shall execute any and all documents and instruments that must be executed under or in connection with the Plan in order to implement the terms of the Plan or to effectuate the Distributions under the Plan, provided that such documents and instruments are reasonably acceptable to such party or parties.

## ARTICLE IX.

## EFFECT OF CONFIRMATION

**9.1.     Dissolution of Asbestos Claimants Committee; Discharge of the Future Claimants' Representative**.  Effective on the Effective Date, the Asbestos Claimants Committee shall be dissolved automatically, whereupon its members, Professionals, and agents shall be released and discharged from any further authority, duties, obligations and responsibilities in the Chapter 11 Case and under the Bankruptcy Code.  Notwithstanding the foregoing, if the Effective Date occurs prior to the Confirmation Order becoming a Final Order, the Asbestos Claimants Committee may, at its option, continue to serve and function for the purposes of participating in any: (a) appeal of the Confirmation Order, but only until such time as the Confirmation Order becomes a Final Order; (b) hearing on a Professional Fee Claim; and (c) adversary proceeding pending on the Effective Date to which the Asbestos Claimants Committee was a party.

Effective on the Effective Date, the Future Claimants' Representative shall be discharged from his duties in such capacity, whereupon the Future Claimants' Representative and his Professionals and agents shall be released and discharged from any further authority, duties, obligations and responsibilities in the Chapter 11 Case and under the Bankruptcy Code.

Yarway shall pay, from the Net Reserve Funds, (i) the reasonable fees and expenses incurred by the Future Claimants' Representative and the Asbestos Claimants Committee through the Effective Date and (ii) the reasonable fees and expenses incurred by the Asbestos Claimants Committee and Post-Effective Date Future Claimants' Representative following the Effective Date (if any) in connection with participating in any: (a) appeal of the Confirmation Order, but only until such time as the Confirmation Order becomes a Final Order; (b) hearing on a Professional Fee Claim; and (c) adversary proceeding pending on the Effective Date to which the Asbestos Claimants Committee or Future Claimants' Representative, as applicable, was a party, in accordance with any applicable fee and expense procedures promulgated during the Chapter 11 Case and with Section 2.2(d) above.  All reasonable and necessary post-Effective Date fees and expenses of the professionals retained by the Asbestos Personal Injury Trust Advisory Committee and the Post-Effective Date Future Claimants' Representative (except as provided in the preceding sentence) shall be paid exclusively by the Asbestos Personal Injury Trust in accordance with the terms of the Asbestos Personal Injury Trust Agreement, and Reorganized Yarway shall not be liable for any such fees and expenses.  The parties shall attempt to resolve any dispute regarding the payment of such fees and expenses in good faith,

and if they shall fail to resolve such dispute, they shall submit the dispute to the Bankruptcy Court for resolution.

**9.2.    Vesting of Assets**.  Pursuant to section 1141(b) of the Bankruptcy Code, except as otherwise provided in the Plan, the Plan Documents or the Confirmation Order, the property of the Estate of Yarway (except for the Yarway Contribution and any other property of Yarway distributed pursuant to the Plan) shall vest in Reorganized Yarway on the Effective Date free and clear of any and all Liens, Claims, Encumbrances and other interests of any Entity. From and after the Effective Date, Reorganized Yarway may operate its business and may use, acquire, and dispose of property free of any restrictions imposed under or by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court.  Without limiting the generality of the foregoing, Reorganized Yarway may, without application to, or approval by, the Bankruptcy Court, pay professional fees and expenses that Reorganized Yarway may incur after the Effective Date.

**9.3.    Preservation of Certain Causes of Action, Rights to Settle Claims and Compromise Controversies, and Defenses**.  With the exception of those claims released by Yarway pursuant to Section 10.5 of the Plan and/or the Yarway Release, or transferred to the Asbestos Personal Injury Trust pursuant to Section 8.3 of the Plan, in accordance with section 1123(b) of the Bankruptcy Code, Reorganized Yarway, as successor in interest to Yarway and its Estate, shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing), all claims, rights, causes of action, suits and proceedings, whether in law or in equity, whether known or unknown, accruing to, or that are property of, Yarway and its Estate pursuant to the Bankruptcy Code or any statute or legal theory, including (a) any rights to, and claims or Causes of Action for, recovery under any policies of insurance issued to or on behalf of Yarway, other than any policies providing coverage for Asbestos Personal Injury Claims; and (b) any rights, claims, and Causes of Action against third parties based upon, attributable to, or arising out of Allowed Claims, in its sole and absolute discretion, without the necessity for Bankruptcy Court approval under Bankruptcy Rule 9019, and Reorganized Yarway shall retain and may enforce all defenses and counterclaims to all Claims asserted against Yarway or its Estate, including, but not limited to, setoff, recoupment and any rights under section 502(d) of the Bankruptcy Code.  From and after the Effective Date, the Asbestos Personal Injury Trust and/or Reorganized Yarway, as appropriate based on the assets and liabilities retained or owed by each respectively, shall be authorized to compromise any controversies on such terms as each may determine, in its sole discretion, to be appropriate, without notice to any other party or approval of or notice to the Bankruptcy Court.  Notwithstanding anything in this Section 9.3 of the Plan to the contrary, neither Yarway nor Reorganized Yarway shall have any rights to pursue any Avoidance Actions against any Protected Party or any other Entity.

**9.4.    Terms of Injunction and Automatic Stay**.  All of the injunctions and/or stays in existence immediately prior to the Confirmation Date provided for in or in connection with the Chapter 11 Case, whether pursuant to section 105, 362, or any other provision of the Bankruptcy Code, the Bankruptcy Rules or other applicable law, shall remain in full force and effect until the injunctions set forth in the Plan become effective pursuant to a Final Order, and shall continue to remain in full force and effect thereafter as and to the extent provided by the Plan, the Confirmation Order, or by their own terms. For the avoidance of doubt, upon effectiveness of the injunctions set forth in the Plan, the automatic stay imposed by section 362

31

of the Bankruptcy Code shall be terminated.  In addition, on and after the Confirmation Date, Reorganized Yarway may seek such further orders as it may deem necessary or appropriate to preserve the status quo during the time between the Confirmation Date and the Effective Date.

Each of the injunctions contained in the Plan or the Confirmation Order shall become effective on the Effective Date and shall continue in effect at all times thereafter unless otherwise provided in the Plan or the Confirmation Order.

**9.5.    No Liability for Certain Tax Claims**.  Unless a taxing authority has asserted a Claim against Yarway before any bar date established therefor, no Claim of such authority shall be Allowed against Yarway or Reorganized Yarway for taxes, penalties, interest, additions to tax, or other charges arising out of the failure, if any, of Yarway or any other Entity to have paid tax or to have filed any tax return (including, but not limited to, any income tax return or franchise tax return) in or for any prior year or arising out of an audit of any return for a period before the Petition Date.

**9.6.    No Successor Liability**.  Except as otherwise expressly provided in the Plan, Yarway, Reorganized Yarway, the other Protected Parties, and the Asbestos Personal Injury Trust do not, nor shall they be deemed to, assume, agree to perform, pay, or indemnify creditors for any liabilities or obligations of Yarway relating to or arising out of the operations of, or assets of, Yarway or Gimpel whether arising prior to or resulting from actions, events, or circumstances occurring or existing at any time prior to the Confirmation Date.  None of Reorganized Yarway, the other Protected Parties, or the Asbestos Personal Injury Trust is, or shall be, a successor to Yarway by reason of any theory of law or equity, and none shall have any successor or transferee liability of any kind or character, except that Reorganized Yarway and the Asbestos Personal Injury Trust shall assume the obligations specified expressly in the Plan and the Confirmation Order.

# ARTICLE X.

## RELEASES, INJUNCTIONS AND INDEMNIFICATION OF CLAIMS

**10.1.    Discharge of Yarway and Reorganized Yarway**.  Except as specifically provided in the Plan or in the Confirmation Order, pursuant to sections 524 and 1141(d)(1)(A) of the Bankruptcy Code, confirmation of the Plan shall discharge Yarway and Reorganized Yarway on the Effective Date from any and all Claims and Demands of any nature whatsoever, including, without limitation, all Claims and liabilities that arose before the Confirmation Date and all debts of the kind specified in sections 502(g), 502(h) and 502(i) of the Bankruptcy Code whether or not:  (a) a Proof of Claim based on such Claim was filed under section 501 of the Bankruptcy Code, or such Claim was listed on any of Yarway's Schedules; (b) such Claim is or was allowed under section 502 of the Bankruptcy Code; or (c) the holder of such Claim has voted on or accepted the Plan.  Except as otherwise specifically provided for in the Plan, as of the Effective Date, the rights provided in the Plan to holders of Claims, Demands and Equity Interests shall be in exchange for and in complete satisfaction, settlement and discharge of all Claims (including, without limitation, Asbestos Personal Injury Claims) and Demands against, Liens on, and Equity Interests in Yarway, Reorganized Yarway and all of their respective assets and properties.

32

10.2.    **Yarway Discharge Injunction.  Except as specifically provided in the Plan or the Confirmation Order, all Entities who have held, hold or may hold Claims or Demands against Yarway are permanently enjoined, on and after the Effective Date, from: (a) commencing or continuing in any manner any action or other proceeding of any kind against Yarway, Reorganized Yarway, or their respective property with respect to such Claim or Demand; (b) enforcing, attaching, collecting, or recovering by any manner or means of any judgment, award, decree, or order against Yarway, Reorganized Yarway, or their respective property with respect to such Claim or Demand; (c) creating, perfecting, or enforcing any Encumbrance of any kind against Yarway, Reorganized Yarway, or their respective property with respect to such Claim or Demand; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due to Yarway or against the property or interests in property of Yarway, with respect to such Claim or Demand; and/or (e) commencing or continuing any action, in any manner and in any place in the world, against Yarway, Reorganized Yarway, or their respective property that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. The foregoing injunction shall extend to the successors of Yarway (including, without limitation, Reorganized Yarway) and their respective properties and interests in property. The discharge provided in this provision shall void any judgment obtained against Yarway at any time, to the extent that such judgment relates to a discharged Claim or Demand.**

10.3.    **Asbestos Personal Injury Channeling Injunction.**

(a)    <u>**Terms**</u>.  **Pursuant to section 524(g) of the Bankruptcy Code, from and after the Effective Date the sole recourse of any holder of an Asbestos Personal Injury Claim on account of such Asbestos Personal Injury Claim shall be to the Asbestos Personal Injury Trust pursuant to this Section 10.3 of the Plan and the Asbestos Personal Injury Trust Distribution Procedures, and such holder shall have no right whatsoever at any time to assert its Asbestos Personal Injury Claim against any Protected Party or any property or interest in property of any Protected Party. On and after the Effective Date, all present and future holders of Asbestos Personal Injury Claims shall be permanently and forever stayed, restrained, barred and enjoined from taking any of the following actions for the purpose of, directly or indirectly or derivatively collecting, recovering, or receiving payment of, on, or with respect to any Asbestos Personal Injury Claim other than from the Asbestos Personal Injury Trust pursuant to the Asbestos Personal Injury Trust Agreement and the Asbestos Personal Injury Trust Distribution Procedures:**

(i)    **commencing, conducting, or continuing in any manner, directly, indirectly or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting any Protected Party or any property or interests in property of any Protected Party;**

(ii)    **enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or**

other order against any Protected Party or any property or interests in property of any Protected Party;

(iii)    creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Protected Party or any property or interests in property of any Protected Party;

(iv)    setting off, seeking reimbursement of, contribution from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Protected Party or any property or interests in property of any Protected Party; and

(v)    proceeding in any manner in any place with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Asbestos Personal Injury Trust, except in conformity and compliance with the Asbestos Personal Injury Trust Agreement and the Asbestos Personal Injury Trust Distribution Procedures.

(b)    **Reservations.**  This Asbestos Personal Injury Channeling Injunction shall not stay, restrain, bar, or enjoin:

(i)    the rights of holders of Asbestos Personal Injury Claims to assert Asbestos Personal Injury Claims against the Asbestos Personal Injury Trust in accordance with the Asbestos Personal Injury Trust Distribution Procedures; and

(ii)    the rights of Entities to assert any Claim, debt, obligation, or liability for payment of Asbestos Personal Injury Trust Expenses against the Asbestos Personal Injury Trust.

10.4.    **Exculpation**.  None of the Exculpated Parties shall have or incur any liability to any Entity for any act or omission in connection with, related to, or arising out of:  (a) the Chapter 11 Case; (b) negotiation, formulation and preparation of the Plan and the other Plan Documents, and any of the terms and/or settlements and compromises reflected in the Plan and the other Plan Documents; (c) pursuit of confirmation of the Plan; (d) consummation of the Plan, or administration of the Plan or the property to be distributed under the Plan or the Asbestos Personal Injury Trust Distribution Procedures; (e) the releases and injunctions contained in the Plan; or (f) the management or operation of Yarway, except for any liability that results primarily from such Entity's willful misconduct or gross negligence as determined by a Final Order, and, in all respects, Yarway, Reorganized Yarway, and each of the other Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities in and under the Chapter 11 Case, the Plan and the Plan Documents.  Without limiting the generality of the foregoing, the Exculpated Parties shall be entitled to and granted the protections and benefits of section 1125(e) of the Bankruptcy Code.

10.5.    **Releases by Yarway and Estate and Related Injunction**.

34

(a)      Except as otherwise expressly provided in the Plan or the Confirmation Order, on the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, Yarway, Reorganized Yarway, and any Entity seeking to exercise the rights of the Estate, in each case, whether individually or collectively, including, without limitation, any successor to Yarway or any Estate representative appointed or selected pursuant to the applicable provisions of the Bankruptcy Code, shall, and shall be deemed to, completely and forever release, waive and discharge unconditionally the Tyco Released Parties from any and all claims, obligations, suits, judgments, remedies, damages, Demands, debts, rights, Causes of Action and liabilities which any of Yarway, Reorganized Yarway, or the Estate is entitled to assert, whether known or unknown, liquidated or unliquidated, fixed or contingent, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity or otherwise, whether direct, indirect, or derivative, based upon, attributable to, or arising out of, in whole or in part, any act or omission, transaction, or occurrence taking place on or prior to the Effective Date (including prior to the Petition Date) (other than the rights under the Plan, the Plan Documents, and the contracts, instruments, releases and other agreements or documents delivered or to be delivered hereunder), including, without limitation, the Tyco Released Party Claims.

(b)      Except as otherwise expressly provided in the Plan or the Confirmation Order, on the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, Yarway, Reorganized Yarway, and any Entity seeking to exercise the rights of the Estate, in each case whether individually or collectively, including, without limitation, any successor to Yarway or any Estate representative appointed or selected pursuant to the applicable provisions of the Bankruptcy Code, shall, and shall be deemed to, completely and forever release, waive and discharge unconditionally the Released Parties (other than the Tyco Released Parties, which Parties are the subject of subparagraph 10.5(a) above) from any and all claims, obligations, suits, judgments, remedies, damages, Demands, debts, rights, Causes of Action and liabilities which any of Yarway, Reorganized Yarway, or the Estate is entitled to assert, whether known or unknown, liquidated or unliquidated, fixed or contingent, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity or otherwise, whether direct, indirect, or derivative, based upon, attributable to, arising out of, in whole or in part, any act or omission, transaction, or occurrence taking place on or prior the Effective Date (including prior to the Petition Date) (other than the rights under the Plan, the Plan Documents, and the contracts, instruments, releases and other agreements or documents delivered or to be delivered hereunder); provided, however, that nothing contained in this subparagraph 10.5(b) is intended to operate as a release of any liability based upon gross negligence or willful misconduct as determined by a Final Order.

(c)      Except as provided in the Plan or the Confirmation Order, Yarway, Reorganized Yarway, and any Entity seeking to exercise the rights of the Estate, in each case, whether individually or collectively, including, without limitation, any successor to Yarway or any Estate representative appointed or selected pursuant to the applicable provisions of the Bankruptcy Code, are permanently enjoined from taking any of the following actions on account of or based upon any and all Claims, obligations, suits, judgments, remedies, damages, Demands, debts, rights, Causes of Action and liabilities

released pursuant to this Section 10.5 and/or the Yarway Release: (a) commencing or continuing any action or other proceeding against the Released Parties or the Tyco Released Parties or their respective property; (b) enforcing, attaching, collecting or recovering any judgment, award, decree or order against the Released Parties or the Tyco Released Parties or their respective property; (c) creating, perfecting or enforcing any Encumbrance against the Released Parties or the Tyco Released Parties or their respective property; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Released Parties or the Tyco Released Parties or against their respective property; and (e) commencing or continuing any action, in any manner and in any place in the world, against the Released Parties or the Tyco Released Parties that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

**10.6.   Certain Waivers.  Although Yarway does not believe that California law is applicable to the Plan, nevertheless, in an abundance of caution, Yarway hereby understands and waives the effect of section 1542 of the California Civil Code to the extent that such section is applicable to Yarway or the Estate.  Section 1542 of the California Civil Code provides:**

> **§1542.  A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

**YARWAY AGREES TO ASSUME THE RISK OF ANY AND ALL UNKNOWN, UNANTICIPATED OR MISUNDERSTOOD DEFENSES, CLAIMS, CAUSES OF ACTION, CONTRACTS, LIABILITIES, INDEBTEDNESS AND OBLIGATIONS WHICH ARE RELEASED BY THE PLAN AND YARWAY HEREBY WAIVES AND RELEASES ALL RIGHTS AND BENEFITS WHICH IT OR THE ESTATE MIGHT OTHERWISE HAVE UNDER THE AFOREMENTIONED SECTION 1542 OF THE CALIFORNIA CIVIL CODE WITH REGARD TO THE RELEASE OF SUCH UNKNOWN, UNANTICIPATED OR MISUNDERSTOOD DEFENSES, CLAIMS, CAUSES OF ACTION, CONTRACTS, LIABILITIES, INDEBTEDNESS AND OBLIGATIONS.  TO THE EXTENT (IF ANY) ANY OTHER LAWS SIMILAR TO SECTION 1542 OF THE CALIFORNIA CIVIL CODE MAY BE APPLICABLE, YARWAY WAIVES AND RELEASES ANY BENEFIT, RIGHT OR DEFENSE WHICH IT OR THE ESTATE MIGHT OTHERWISE HAVE UNDER ANY SUCH LAW WITH REGARD TO THE RELEASE OF UNKNOWN, UNANTICIPATED OR MISUNDERSTOOD DEFENSES, CLAIMS, CAUSES OF ACTION, CONTRACTS, LIABILITIES, INDEBTEDNESS AND OBLIGATIONS.**

**10.7.   Disallowed Claims**.  On and after the Effective Date, Yarway and the Estate shall be fully and finally discharged from any liability or obligation on a Disallowed Claim, and any order creating a Disallowed Claim that is not a Final Order as of the Effective

Date solely because of an Entity's right to move for reconsideration of such order pursuant to section 502 of the Bankruptcy Code or Bankruptcy Rule 3008 shall nevertheless become and be deemed to be a Final Order on the Effective Date.  The Confirmation Order, except as otherwise provided therein or herein, shall constitute an order: (a) disallowing all Claims (other than Asbestos Personal Injury Claims) to the extent such Claims are not allowable under any provision of section 502 of the Bankruptcy Code, including, but not limited to, time-barred Claims, and Claims for unmatured interest, and (b) disallowing or subordinating, as the case may be, any Claims, or portions of Claims, for penalties or non-compensatory damages.

### 10.8.    Indemnification Obligations.

(a)    <u>Indemnification of Yarway Related Parties</u>.  As of the Effective Date, both Reorganized Yarway and the Asbestos Personal Injury Trust will, pursuant to the Asbestos Claims Indemnification Agreement, which shall be substantially in the form attached hereto as <u>Exhibit H</u>, indemnify, release and hold harmless each of the Non-Debtor Affiliates and the Representatives of Yarway, Reorganized Yarway, and the Non-Debtor Affiliates in respect of any liability, obligation, fee, judgment, settlement, or expense, including, without limitation, legal fees and expenses, arising from or incurred in connection with any action based upon, attributable to, or arising out of an Asbestos Personal Injury Claim, or any violation of the Asbestos Personal Injury Channeling Injunction by any Entity.

(b)    <u>Indemnification and Reimbursement of Certain Representatives</u>.  For purposes of the Plan, the obligations of Yarway to indemnify and reimburse persons who are or were directors, officers, or employees of Yarway on the Petition Date or at any time thereafter against and for any obligations as provided in Yarway's certificate of incorporation, by-laws, applicable state law, or other agreement, or any combination of the foregoing, shall survive confirmation of the Plan, remain unaffected thereby, and not be discharged in accordance with section 1141 of the Bankruptcy Code, irrespective of whether indemnification or reimbursement is owed in connection with an event occurring before, on, or after the Petition Date.  Such obligations shall be assumed by Reorganized Yarway on the Effective Date.  In furtherance of the foregoing, Reorganized Yarway shall use its commercially reasonable efforts to maintain or procure, as of the Effective Date, insurance for the benefit of such directors, officers, or employees at levels satisfactory to Reorganized Yarway and the Asbestos Personal Injury Trust.

# ARTICLE XI.

## CONDITIONS TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

**11.1.    Conditions Precedent to Confirmation of the Plan**.  The following are conditions precedent to confirmation of the Plan that are designed, among other things, to ensure that the injunctions, releases and discharges set forth in Article X shall be effective, binding and enforceable and that must be satisfied, unless waived in accordance with Section 11.3 below:

(a)    The Bankruptcy Court shall have entered an order, acceptable in form and substance to the Plan Proponents, approving the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code.

(b)    The Confirmation Order shall be acceptable in form and substance to the Plan Proponents, the Asbestos Claimants Committee, and the Future Claimants' Representative.

(c)    The Confirmation Order shall, among other things:

(i)    order that the Confirmation Order shall supersede any Bankruptcy Court orders issued prior to the Confirmation Date that may be inconsistent with the Confirmation Order;

(ii)    provide that, except with respect to obligations specifically preserved in the Plan, Yarway is discharged effective on the Effective Date (in accordance with the Plan) from any Claims and Demands, and Yarway's liability in respect thereof, whether reduced to judgment or contingent, asserted or unasserted, fixed or not, matured or unmatured, disputed or undisputed, legal or equitable, or known or unknown, that arose from any agreement of Yarway entered into or obligation of Yarway incurred before the Effective Date, or from any conduct of Yarway prior to the Effective Date, whether such liability accrued before or after the Petition Date, is extinguished completely;

(iii)    authorize the implementation of the Plan in accordance with its terms;

(iv)    approve the Asbestos Personal Injury Channeling Injunction;

(v)    provide that the Asbestos Personal Injury Trust shall receive the Reorganized Yarway Common Stock as of the Effective Date;

(vi)    provide that the Asbestos Personal Injury Trust and Reorganized Yarway shall execute and deliver the Asbestos Claims Indemnification Agreement;

38

(vii)    provide that all transfers of assets of Yarway contemplated under the Plan shall be free and clear of all Claims and Encumbrances against or on such assets;

(viii)    except as otherwise provided in the Plan or Confirmation Order, provide that the assets revesting in Reorganized Yarway shall be free and clear of all Claims and Encumbrances;

(ix)    provide that any transfers effected or entered into, or to be effected or entered into, under the Plan shall be and are exempt under section 1146(a) of the Bankruptcy Code from any state, city or other municipal transfer taxes, mortgage recording taxes and any other stamp or similar tax;

(x)    provide that the transfers of property by Yarway to Reorganized Yarway (A) are or will be legal, valid, and effective transfers of property; (B) vest or will vest Reorganized Yarway with good title to such property; (C) do not and will not constitute avoidable transfers under the Bankruptcy Code or under other applicable bankruptcy or non-bankruptcy law; and (D) do not and will not subject Reorganized Yarway to any liability by reason of such transfer under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, any laws affecting or effecting successor or transferee liability;

(xi)    provide that all Executory Contracts assumed or assumed and assigned by Yarway during the Chapter 11 Case or under the Plan, if any, shall remain in full force and effect for the benefit of Reorganized Yarway or the assignee thereof notwithstanding any provision in such contract (including those provisions described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits such assignment or transfer or that enables or requires termination of such contract or lease;

(xii)    require that as a condition to receiving any distributions of any kind from the Asbestos Personal Injury Trust, each holder of an Asbestos Personal Injury Claim execute the Asbestos Personal Injury Claimant Release; and

(xiii)    approve in all respects the other settlements, transactions and agreements to be effected pursuant to the Plan, including, without limitation, the Asbestos Personal Injury Trust Agreement, the Asbestos Personal Injury Trust Distribution Procedures, and the other Asbestos Personal Injury Trust Documents, and the releases herein of the Released Parties and Tyco Released Parties.

(d)    In addition to the foregoing, the Confirmation Order shall contain the following findings of fact and conclusions of law, among others:

(i)    The Plan complies with all applicable provisions of the Bankruptcy Code, including, without limitation, those requiring that the Plan be proposed in good faith and that the Confirmation Order not be procured by fraud;

(ii)    The Plan and its acceptance otherwise comply with sections 524(g) and 1126 of the Bankruptcy Code, and confirmation of the Plan is in the best interests of all creditors;

(iii)    The Plan does not provide for the liquidation of all or substantially all of the property of Yarway, Reorganized Yarway will continue in business as a Reorganized Debtor, and confirmation of the Plan is not likely to be followed by the liquidation of Reorganized Yarway or the need for further financial reorganization;

(iv)    As of the Petition Date, Yarway had been named as a defendant in personal injury, wrongful death or property damage actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products;

(v)    Upon the Effective Date, the Asbestos Personal Injury Trust shall assume the liabilities of Yarway with respect to Asbestos Personal Injury Claims;

(vi)    The Asbestos Personal Injury Trust is to be funded by contribution of the Asbestos Personal Injury Trust Assets, including the Yarway Contribution and the Tyco Contribution;

(vii)    The Asbestos Personal Injury Trust will on the Effective Date own one hundred percent (100%) of the Reorganized Yarway Common Stock and all rights to receive dividends or other distributions on account of such stock;

(viii)    The Asbestos Personal Injury Trust is to use its assets and income to pay Asbestos Personal Injury Claims and Asbestos Personal Injury Trust Expenses;

(ix)    Yarway is likely to be subject to substantial future Demands for payment arising out of the same or similar conduct or events that gave rise to the Asbestos Personal Injury Claims, and all such Demands are subject to the Asbestos Personal Injury Channeling Injunction;

(x)    The actual amounts, numbers, and timing of Demands cannot be determined;

(xi)    Pursuit of Demands outside the procedures prescribed by the Plan and the Asbestos Personal Injury Trust Distribution Procedures is likely to threaten the Plan's purpose to deal equitably with Asbestos Personal Injury Claims;

(xii)    The Plan separately classifies Asbestos Personal Injury Claims in Class 4, and at least two-thirds (2/3) in amount and seventy-five percent (75%) of the members in such Class that actually voted on the Plan have voted to accept the Plan;

(xiii)    The Asbestos Personal Injury Trust will have the sole and exclusive authority as of the Effective Date to satisfy or defend against all Asbestos Personal Injury Claims;

(xiv)    Pursuant to:  (a) the Asbestos Personal Injury Trust Distribution Procedures; (b) court order; or (c) otherwise, the Asbestos Personal Injury Trust will operate through mechanisms such as structured, periodic, or supplemental payments, pro rata distributions, matrices, or periodic review of estimates of the numbers and values of Asbestos Personal Injury Claims or other comparable mechanisms, that provide reasonable assurance that the Asbestos Personal Injury Trust will value, and be in a financial position to pay, current and future Asbestos Personal Injury Claims in substantially the same manner regardless of the timing of the assertion of such Asbestos Personal Injury Claims;

(xv)    The Future Claimants' Representative was appointed by the Bankruptcy Court pursuant to section 524(g) of the Bankruptcy Code as part of the proceedings leading to the issuance of the Asbestos Personal Injury Channeling Injunction for the purpose, among other things, of protecting the interests of Future Demand Holders;

(xvi)    The Asbestos Personal Injury Channeling Injunction is to be implemented in accordance with the Plan and the Asbestos Personal Injury Trust;

(xvii)    The Asbestos Personal Injury Channeling Injunction is essential to the Plan and Yarway's reorganization efforts;

(xviii)  The terms of the Asbestos Personal Injury Channeling Injunction and the other injunctions contained in the Plan, including any provisions barring actions against third parties, are set forth in the Plan and the Disclosure Statement;

(xix)    The Tyco Contribution is essential to the feasibility of the Plan and the successful reorganization of Yarway;

(xx)    The Yarway Contribution and Tyco Contribution collectively constitute a sufficient basis upon which to provide the Protected Parties with the protections afforded to them under the Plan, Plan Documents and Confirmation Order;

(xxi)    In light of the benefits provided, or to be provided, to the Asbestos Personal Injury Trust by or on behalf of each Protected Party, the Asbestos Personal Injury Channeling Injunction is fair and equitable to all holders of Asbestos Personal Injury Claims (including Demands); and

(xxii)    The release received by Yarway, Representatives of Yarway, and the Tyco Released Parties in exchange for the Yarway Contribution and Tyco Contribution is essential to the global settlement of Asbestos Personal Injury Claims arising from the conduct or products of Yarway reflected in the Plan.

**11.2.   Conditions Precedent to the Effective Date of the Plan**.  The following are conditions precedent to occurrence of the Effective Date of the Plan that must be satisfied, unless waived in accordance with Section 11.3 below:

(a)   All conditions precedent to the Confirmation Date shall have been satisfied or waived and shall continue to be satisfied or waived, and the Confirmation Date shall have occurred on or before June 30, 2015 unless otherwise mutually agreed by Yarway, Tyco, the Asbestos Claimants Committee, and the Future Claimants' Representative;

(b)   The Confirmation Order, in form and substance acceptable to the Plan Proponents, the Asbestos Claimants Committee, and the Future Claimants' Representative, shall have been entered by the Bankruptcy Court and affirmed by the District Court or issued by the District Court;

(c)   No request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending;

(d)   No fact or circumstance shall exist that would prevent the Asbestos Personal Injury Channeling Injunction from coming into full force and effect immediately upon the occurrence of the Effective Date;

(e)   The Asbestos Claims Indemnification Agreement shall have been executed and delivered, and no fact or circumstance shall exist that prevents the Asbestos Claims Indemnification Agreement from being in full force and effect immediately upon the occurrence of the Effective Date;

(f)   No fact or circumstance shall prevent the Asbestos Personal Injury Trust from being funded by the Yarway Contribution and the Tyco Contribution upon occurrence of the Effective Date;

(g)   All Plan Documents shall have been executed and delivered; and

(h)   All other actions, documents and agreements necessary to implement those provisions of the Plan to be effectuated on or prior to the Effective Date, in form and substance satisfactory to the Plan Proponents, shall have been effected or executed and delivered.

**11.3.   Waiver of Conditions Precedent**.  To the fullest extent permitted by law, any of the conditions precedent set forth in Sections 11.1 and 11.2 above may be waived or modified, in whole or in part, by the Plan Proponents with the consent of the Asbestos Claimants Committee and Future Claimants' Representative (which consent shall not be unreasonably withheld).  Any such waiver or modification may be effected at any time without leave or order of the Bankruptcy Court or District Court, and without any other formal action.

**11.4.   Failure to Achieve the Effective Date**.  If each of the conditions to the Effective Date is not met or duly waived in accordance with Section 11.3, then upon motion by the Plan Proponents, with the consent of the Asbestos Claimants Committee and Future

42

Claimants' Representative, which consent shall not be unreasonably withheld, and notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order shall be vacated by the Bankruptcy Court.  If (a) the Plan Proponents revoke or withdraw the Plan, (b) the Confirmation Order is vacated, (c) the Plan is otherwise not confirmed by a Final Order, or (d) the Plan is confirmed and does not become effective for any other reason, then the rights of all parties in interest in the Chapter 11 Case are and shall be reserved in full.  In any such event, the Plan shall become null and void in all respects; any settlement or compromise embodied in the Plan, any assumption or rejection of Executory Contracts effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and nothing contained in the Plan or the Confirmation Order, if previously entered, and no acts taken in preparation for consummation of the Plan, shall:  (a) constitute or be deemed to constitute a waiver, release or settlement of any Claims by or against, or any Equity Interests in, Yarway or any other Entity, (b) prejudice in any manner the rights of Yarway or any Entity in any further proceedings involving Yarway; or (c) constitute an admission of any sort by Yarway or any other Entity.

## ARTICLE XII.

## JURISDICTION OF BANKRUPTCY COURT

**12.1.    Retention of Jurisdiction**.  Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court and, to the extent applicable, the District Court, shall, to the fullest extent permitted by law, retain and have exclusive jurisdiction over all matters arising out of and related to the Chapter 11 Case and the Plan, including, among other things, jurisdiction to:

(a)    hear and determine any and all objections to and proceedings involving the allowance, estimation, classification, and subordination of Claims that have been or properly should have been brought in the Bankruptcy Court (other than Asbestos Personal Injury Claims) or Equity Interests;

(b)    hear and determine all objections to the termination of the Asbestos Personal Injury Trust;

(c)    hear and determine such other matters that may be set forth in or arise in connection with the Plan, the Confirmation Order, the Asbestos Personal Injury Channeling Injunction, or the Asbestos Personal Injury Trust Agreement;

(d)    hear and determine any proceeding that involves the validity, application, construction, enforceability, or modification of the Asbestos Personal Injury Channeling Injunction;

(e)    hear and determine any conflict or other issues that may arise in the Chapter 11 Case, including the implementation and enforcement of all orders entered by the Bankruptcy Court in the Chapter 11 Case, and in the administration of the Asbestos Personal Injury Trust;

(f) enter such orders as are necessary to implement and enforce the releases and injunctions described herein, including, if necessary, in connection with application of the protections afforded by section 524 of the Bankruptcy Code and/or the Plan to the Protected Parties;

(g) hear and determine any and all applications for allowance of Professional Fee Claims and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan;

(h) enter such orders authorizing non-material modifications to the Plan as may be necessary to comply with section 468B of the Internal Revenue Code;

(i) hear and determine any applications pending on the Effective Date for the assumption, assumption and assignment, or rejection, as the case may be, of Executory Contracts to which Yarway is a party, and to hear and determine and, if necessary, liquidate any and all Claims arising therefrom;

(j) hear and determine any and all applications, Claims, causes of action, adversary proceedings, and contested or litigated matters that may be pending in the Chapter 11 Case on the Effective Date or commenced by Reorganized Yarway or any other party in interest (including, without limitation, the Asbestos Personal Injury Trust) in the Chapter 11 Case subsequent to the Effective Date;

(k) consider any modifications of the Plan, and remedy any defect or omission or reconcile any inconsistency or make any other necessary modifications in or to the Plan, the Asbestos Personal Injury Trust Documents or any order of the Bankruptcy Court, including the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan, to the extent authorized by the Bankruptcy Code and the Bankruptcy Rules; provided, that there shall be no modification made at any time that would reduce or eliminate any of the protections provided herein to the Protected Parties or releases provided hereunder;

(l) hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan or any Entity's obligations hereunder and issue orders in aid of confirmation, consummation and execution of the Plan to the extent authorized by section 1142 of the Bankruptcy Code, including, but not limited to, compelling the conveyance of property and other performance contemplated under the Plan and documents executed in connection herewith;

(m) hear and determine all questions and disputes and enter such orders or judgments, including, but not limited to, injunctions, as are necessary to (i) enforce the title, rights and powers of Reorganized Yarway and the Asbestos Personal Injury Trust, and (ii) enable holders of Claims to pursue their rights against any Entity that may be liable therefor pursuant to applicable law or otherwise;

(n)     hear and determine any proposed compromise and settlement of any Claim against or cause of action by or against Yarway that has been or properly should have been brought in the Bankruptcy Court to the extent requested by Reorganized Yarway;

(o)     hear and determine any timely objections to Administrative Expense Claims asserted or to Proofs of Claim filed, both before and after the Confirmation Date, including any objections to the classification of any Claim, and to allow or disallow any Disputed Claim, in whole or in part;

(p)     hear and determine matters concerning state, local and federal taxes, tax refunds, tax attributes, tax benefits, and similar or related matters with respect to Yarway, Reorganized Yarway, or the Asbestos Personal Injury Trust arising on or prior to the Effective Date, arising on account of transactions contemplated by the Plan Documents, or relating to the period of administration of the Chapter 11 Case;

(q)     hear and determine such other matters as may be set forth in the Confirmation Order or other orders of the Bankruptcy Court, or which may arise in connection with the Plan, the Confirmation Order, or the Effective Date, as may be authorized under the provisions of the Bankruptcy Code or any other applicable law;

(r)     hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan or any Entity's obligations hereunder, including, but not limited to, performance of Yarway's duties under the Plan;

(s)     hear and determine all controversies, suits, and disputes regarding interpretation or enforcement of the Asbestos Claims Indemnification Agreement;

(t)     enforce remedies upon any default under the Plan;

(u)     hear and determine any other matter not inconsistent with the Bankruptcy Code;

(v)     hear and determine any claim that in any way challenges or is based on any provision in the Confirmation Order; and

(w)     enter a final decree closing the Chapter 11 Case.

If and to the extent that the Bankruptcy Court is not permitted under applicable law to exercise jurisdiction over any of the matters specified above, including, without limitation, the matter described in Section 12.1(d), the reference to the "Bankruptcy Court" in the preamble to this Section 12.1 shall be deemed to be a reference to the "District Court."  Notwithstanding anything in this Section 12.1 to the contrary, the Asbestos Personal Injury Trust Agreement and the Asbestos Personal Injury Trust Distribution Procedures shall govern the satisfaction of Asbestos Personal Injury Claims and the forum in which Asbestos Personal Injury Claims shall be determined.

**12.2.    Modification of Plan**.  The Plan Proponents, with the consent of the Asbestos Claimants Committee and the Future Claimants' Representative, which consent may not be unreasonably withheld, may alter, amend, or modify the Plan or any Exhibits thereto under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date and may include any such amended Exhibits in the Plan, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Plan Proponents shall have complied with section 1125 of the Bankruptcy Code, to the extent necessary.  Further, the Plan Proponents, with the consent of the Asbestos Claimants Committee and the Future Claimants' Representative, which consent may not be unreasonably withheld, may alter, amend, or modify the Plan or any Exhibits thereto at any time after entry of the Confirmation Order and before the Plan's substantial consummation, provided that:  (a) the Plan, as modified, altered, or amended, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and (b) the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under section 1129 of the Bankruptcy Code, and finds that the circumstances warrant such modification.  A holder of a Claim that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, the Plan as modified, unless, within the time fixed by the Bankruptcy Court, if any, such holder changes its previous acceptance or rejection, to the extent such holder is afforded the opportunity to do so under section 1127(d) of the Bankruptcy Code.

After the Effective Date, Reorganized Yarway, Tyco, or the Asbestos Personal Injury Trust, as applicable, may remedy any defects or omissions or reconcile any inconsistencies in the Plan Documents for the purpose of implementing the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan, so long as the interests of the holders of Allowed Claims and other applicable parties-in-interest are not adversely affected thereby.

Notwithstanding anything in this Section 12.2, there shall be no modification to the Plan made at any time that would reduce or eliminate any of the protections provided herein, or in the releases provided hereunder, to the Protected Parties, without the consent of Tyco and Yarway.

**12.3.    Consent to Jurisdiction**.  Upon default under the Plan, Yarway, Reorganized Yarway, Tyco, the Asbestos Personal Injury Trust, the Asbestos Personal Injury Trustee(s), the Asbestos Personal Injury Trust Advisory Committee, and the Future Claimants' Representative, respectively, consent to the jurisdiction of the Bankruptcy Court, and agree that it shall be the preferred forum for all proceedings relating to any such default.

## ARTICLE XIII.

## MISCELLANEOUS PROVISIONS

**13.1.    Governing Law**.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), or an Exhibit hereto, or an instrument, agreement or other document executed in connection with the Plan provides otherwise, the rights, duties and obligations arising under the Plan, and the instruments, agreements and other documents executed in connection with the Plan, shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Delaware without giving effect to the principles of conflicts of law thereof.

**13.2.    Notices**.  To be effective, all notices, requests and demands to or upon the Plan Proponents, or, as applicable, upon the Future Claimants' Representative and the Asbestos Claimants Committee, shall be in writing and, unless otherwise expressly provided herein, shall be addressed as follows and mailed by registered or certified mail, return receipt requested, and shall be deemed to have been duly given or made when actually delivered:

**If to Yarway:**

Yarway Corporation
9 Roszel Road
Princeton, New Jersey 08550
Facsimile: (609) 806-3869
Attn: Kevin Coen

with copies (which alone will not constitute notice) to:

| | |
|---|---|
| Sidley Austin LLP | Cole Schotz P.C. |
| One South Dearborn Street | 500 Delaware Avenue, Suite 1410 |
| Chicago, Illinois  60603 | Wilmington, Delaware 19801 |
| Facsimile: (312) 853-7036 | Facsimile: (302) 652-3117 |
| Attn: Kenneth P. Kansa, Esq. | Attn:  J. Kate Stickles, Esq. |

**If to Tyco:**

Tyco International plc
9 Roszel Road
Princeton, New Jersey 08550
Facsimile: (609) 806-3869
Attn: Dennis P. Lynch

with copies (which alone will not constitute notice) to:

| | |
|---|---|
| Gibson, Dunn & Crutcher LLP | Richards, Layton & Finger, P.A. |
| 200 Park Avenue | One Rodney Square |
| New York, New York 10166 | 920 North King Street |
| Facsimile: (212) 351-4035 | Wilmington, Delaware 19801 |
| Attn:  Michael A. Rosenthal, Esq. | Facsimile: (302) 651-7701 |
| | Attn: Mark D. Collins, Esq. |

**If to the Future Claimants' Representative:**

Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 N. King Street
Wilmington, Delaware  19801
Facsimile: (302) 571-1253
Attn: James L. Patton, Jr., Esq.

with a copy (which alone will not constitute notice) to:

Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 N. King Street
Wilmington, Delaware  19801
Facsimile: (302) 571-1253
Attn: Edwin J. Harron, Esq.

**If to the Asbestos Claimants Committee:**

Caplin & Drysdale, Chartered                    Campbell & Levine, LLC
One Thomas Circle N.W., Suite 1100          222 Delaware Avenue, Suite 1620
Washington, D.C. 20005                            Wilmington, Delaware 19801
Facsimile: (202) 429-3301                          Facsimile: (302) 426-9947
Attn:  Kevin C. Maclay, Esq.                       Attn:  Mark T. Hurford, Esq.

     **13.3.    Inconsistencies**.  To the extent the Plan is inconsistent with either the Disclosure Statement or the other Plan Documents, the provisions of the Plan shall be controlling.  To the extent the Plan is inconsistent with the Confirmation Order, the provisions of the Confirmation Order shall be controlling.

     **13.4.    Tax Reporting and Compliance**. In connection with the Plan and all instruments issued in connection therewith and Distributions thereon, Yarway and Reorganized Yarway shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all Distributions hereunder shall be subject to any such withholding and reporting requirements.  No holder of an Allowed Claim against Yarway shall effectuate any withholding with respect to the cancellation or satisfaction of such Allowed Claim under the Plan.  Reorganized Yarway is hereby authorized to request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all taxable periods of Yarway ending after the Petition Date through and including the Effective Date of the Plan.

     **13.5.    Payment of Statutory Fees**.  All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on the Effective Date if then due.  Thereafter, Yarway and/or Reorganized Yarway shall continue to pay such fees and make such reports as required under Fed. R. Bankr. P. 2015 and the U.S. Trustee Guidelines until the case is converted, dismissed or final decreed and closed.

     **13.6.    Exemption from Transfer Taxes**.  Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, pledge or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan shall be exempt from all stamp, transfer, or similar taxes, as provided in section 1146(a).

**13.7.    Recordable Order**.  Upon Confirmation of the Plan, the Confirmation Order shall be deemed to be in recordable form, and shall be accepted by any recording officer for filing and recording purposes without further or additional orders, certifications, or other supporting documents.

**13.8.    Binding Effect**.  The rights, benefits and obligations of any Entity named or referred to in the Plan, or whose actions may be required to effectuate the terms of the Plan, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity (including, but not limited to, any trustee appointed for Yarway under Chapters 7 or 11 of the Bankruptcy Code).  The Confirmation Order shall provide that the terms and provisions of the Plan and the Confirmation Order shall survive and remain effective after entry of any order which may be entered converting the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code, and the terms and provisions of the Plan shall continue to be effective in the Chapter 11 Case or any superseding case under the Bankruptcy Code.

**13.9.    Severability**.  After the Effective Date, any provision of the Plan, the Plan Documents, the Confirmation Order, or any of the Exhibits to the Plan that is determined to be prohibited, unenforceable, or invalid by a court of competent jurisdiction or any other governmental Entity with appropriate jurisdiction may be deemed ineffective as to any jurisdiction in which such provision is prohibited, unenforceable, or invalidated to the extent of such prohibition, unenforceability, or invalidation, without invalidating the effectiveness of the remaining provisions of the Plan, the Plan Documents, the Confirmation Order, and the Exhibits to the Plan or affecting the validity or enforceability of such provision and such remaining provisions in any other jurisdiction.

**13.10.    Further Authorizations**.  The Plan Proponents, as applicable, and, after the Effective Date, the Asbestos Personal Injury Trust, if and to the extent necessary, may seek such orders, judgments, injunctions, and rulings as each deems necessary to carry out further the intentions and purposes of, and to give full effect to the provisions of, the Plan.

**13.11.    General Statements**.  Statements of a general nature set forth in the Plan shall not be construed to limit or restrict the specific provisions herein.

**13.12.    Entire Agreement**.  The Plan Documents set forth the entire agreement and undertakings relating to the subject matter thereof and supersede all prior discussions, negotiations, understandings and documents.  No Entity shall be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter of the Plan Documents other than as expressly provided for in the Plan or the other Plan Documents or as may hereafter be agreed to by the affected parties in writing.

Dated: _____, 2015                    **YARWAY CORPORATION**


By: _____
          Name:  Kevin Coen
          Title:    Vice President and Secretary


SIDLEY AUSTIN LLP
Larry J. Nyhan
Kenneth P. Kansa
Dennis M. Twomey
Allison Ross Stromberg
One South Dearborn Street
Chicago, Illinois 60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

- and -

COLE SCHOTZ P.C.
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

Counsel to the Debtor and Debtor-in-
Possession

Dated: _____, 2015                         **TYCO INTERNATIONAL PLC**


By:  _____
      Name:  Judith Reinsdorf
      Title:    EVP & General Counsel


GIBSON, DUNN & CRUTCHER LLP
Michael A. Rosenthal
Jeremy L. Graves
200 Park Avenue
New York, New York
Telephone:  (212) 351-4000
Facsimile:  (212) 351-4035

- and -

RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins (No. 2981)
Marcos A. Ramos (No. 4450)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

Counsel to Tyco International plc